LUDOLPH W. GUNTHER and HENRY A. RODEWALD, vs. RICHARD H. ATWELL.

Strictly speaking, a contract of sale by sample, is not a warranty of quality, but an agreement of the seller to deliver, and of the buyer to accept, goods of the same kind and quality as the sample. The identity of the goods sold, in kind, condition and quality, with that of the sample, is of the essence of the contract, and where the goods sold do not correspond with the sample, there would seem to be no performance of the contract.

The rule recognized as governing sales by sample, seems to be founded on, or to be, a simple application of the principle that to fulfil a contract of sale, the seller must deliver that which he has agreed to sell, and that if he does not, the purchaser may rescind the contract, or receive the goods, and claim a deduction for their relative inferiority in value.

To apply the foregoing principle, it is necessary, in making the sale, that the sample should be so used between the buyer and seller as to express or become part of the contract; or, in other words, that the exhibition of the sample should amount to, and take the place of, an express averment by the seller of the condition and quality of the goods sold, upon which the buyer relies in making the purchase.

The mere exhibition of a sample by the seller, and examination of it by the buyer, does not amount to such an averment, unless, from all the facts or circumstances of the case, it can be presumed that an understanding has been arrived at between the parties, that the bulk is to correspond with the sample.

A sale by sample would only seem to imply, on the part of the seller, a warranty for correspondence in condition and quality, where the buyer knows, or is justified in assuming, that the seller, or some one acting for him, or for whose act, in that respect, the seller could be held responsible, had exercised a discretion in selecting the sample.

Where samples are prepared by a State tobacco inspector, his agency in performing that duty is as much in behalf of the buyer as the seller, and neither buyer or seller has cause of complaint, or right of redress, either against the other, for any mistake as to condition or quality of the goods sold, if with mutual knowledge and good faith they buy and sell upon the credit of the samples so obtained.

The obligation to be presumed from a bill of parcels designating merchandize sold as of a particular kind, is that the seller shall deliver goods of the kind mentioned, but, ordinarily, imposes on him no obligation as to the quality.

In an action for damages alleged to have resulted from the non-correspondence of two hogsheads of tobacco sold by sample, with the samples by which it was sold, the defendant offered to prove "that according to the

Gunther & Rodewald, vs. Atwell.

usage and understanding of merchants in the tobacco trade in the city of Baltimore, the purchaser does not look to the seller to insure a correspondence between the quality of the tobacco in the sample and that in the hogsheads, but relies exclusively upon the sample, and the fidelity of the inspector in its preparation." HELD: that such evidence is admissible, though the circumstances of the case may render it of no effect.

APPEAL from the Court of Common Pleas of Baltimore city.

This was an action brought by the appellee against the appellants, at the January term, 1859, of the Court of Common Pleas of Baltimore city, to recover damages alleged to have been sustained by him, in consequence of a want of correspondence, in point of quality, between two casks of tobacco purchased by him from the appellants, and two casks of tobacco as described in the bill of parcels rendered by the appellants and the samples exhibited by them to the appellee, at the time of the sale. The declaration alleges, "that the defendants, by then and there representing said tobacco to be '*heavy Clarksville tobacco*,' and of the quality corresponding with the sample, which they then and there exhibited to the plaintiff, sold and delivered said tobacco," &c., "whereas, in truth and in fact, said tobacco was not of the quality represented by the defendants, and did not correspond with the sample exhibited." The pleas were: 1st, that the defendants "did not represent as alleged;" and 2nd, that they "were not indebted as alleged."

*1st Exception.*—The plaintiff offered in evidence a bill of parcels rendered to him by the defendants, in which the tobacco sold by them to the plaintiff is described as "*heavy Clarksville tobacco*," and the numbers and weight of the hogsheads given, as derived from the inspection, by one of the State tobacco inspectors at Baltimore, and proved, by a competent witness, that the numbers upon said hogsheads corresponded with those mentioned in the bill of lading

Gunther & Rodewald, *vs.* Atwell.

under which the tobacco was shipped to Liberia, consigned to B. W. Leary; that the samples of the said hogsheads were good tobacco, that the numbers thereon corresponded with those in the bill of parcels, and that the price charged in the bill of parcels was the price of good tobacco at that time.

The plaintiff further proved, by the consignee, that he received the two hogsheads of tobacco mentioned in the bill of lading, and also the samples, on the coast of Africa, and compared them; that he examined carefully the hogsheads, as well as their contents, and that their numbers and marks corresponded with those given in the bill of parcels; that the samples were fair Kentucky tobacco; and if the tobacco in the hogsheads had corresponded with the samples, he could have sold the entire lot at thirty-three cents per pound, whereas, from its inferior quality, he could only sell a portion of it, in lots, at an average of fourteen cents per pound; that five hundred pounds were entirely unsaleable; that the whole of it was of different qualities, some of it being stems and scrapings, or trash; and that it was generally of a very inferior quality, and very little of it equal to the samples.

The defendants then proved, by one of the State tobacco inspectors, that two hogsheads of tobacco, numbered as in the bill of parcels, were inspected at his warehouse in the month of April 1858, and duly passed inspection, and that he would have "stayed" them, if they had contained the sort of tobacco proved by the witness, Leary, to have been found in the tobacco consigned to him. The same witness stated, on cross-examination, that the marks and numbers on the hogsheads of tobacco, and in the bill of parcels, showed that from the 1st of January of that year, to the date of the inspection of said two hogsheads, upwards of 4500 hogsheads of tobacco had been inspected at the warehouse in which the witness was inspector; that it was pos-

sible for a hogshead containing some trash to pass inspection, but that the two hogsheads so inspected by him were Kentucky tobacco, which is generally clean.

The defendants also proved, by Henry Ahrens, that according to the universal usage of tobacco dealers in the city of Baltimore, sales of tobacco are effected by the vendor exhibiting to the purchaser the warehouse samples prepared by the State inspector. The defendants then offered to prove, by the same witness, that according to the usage and understanding of merchants in the tobacco trade in the city of Baltimore, the purchaser does not look to the seller to insure a correspondence between the quality of the tobacco in the sample and that in the hogshead, but relies exclusively upon the sample and the fidelity of the inspector in' its preparation. To this offer the plaintiff objected, on the ground that the evidence so offered was inadmissible, which objection was sustained by the Court, and the defendants excepted.

*2nd Exception.*—The defendants then offered the following prayer: "That if the jury should believe, from the evidence, that the defendants sold the tobacco in question to the plaintiff, and, in so selling, practiced no concealment or fraud, and made no false representation regarding the quality and condition of the said tobacco, and shall further find, from the evidence, that the defendants exhibited to the plaintiff, at the time of said sale, warehouse samples of the said tobacco, prepared and furnished by the State inspector of tobacco, and that it was, at the time of the said sale by the defendants to the plaintiff, the general usage of dealers in tobacco in the city of Baltimore, to sell tobacco by exhibiting warehouse samples of the same prepared and furnished by the State inspector of tobacco, then the plaintiff is not entitled to recover on account of any want of correspondence between the quality of the tobacco in the samples and that in the hogsheads, nor on account

of any scrapings or dirt intermixed with the tobacco in the hogsheads.'' This prayer the Court rejected, and the defendants excepted.

*3rd Exception.*—The defendants also offered the following prayer: ''That if the jury believe from the evidence, that the bill of parcels offered in proof by the plaintiff, was signed by the defendants and accepted by the plaintiff, that then the said bill of parcels is the only evidence of the contract between the parties, and the plaintiff is not entitled to recover on account of any defect in the quality of the tobacco purchased by him from the defendants, or on account of any want of correspondence between it and the samples, or on account of any scrapings or trash which may have been intermixed with said tobacco at the time of the sale; if they believe the said sale was made fairly and *bona fide.*'' This prayer the Court also rejected, and the defendants excepted.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*William Schley* and *George C. Maund*, for the appellants:

In support of the first prayer, the appellants will contend—

1st. That upon a sale of goods by the mere exhibition of samples, when the purchaser has the opportunity of inspecting the goods for himself the law does not imply a warranty on the part of the vendor, that the goods in bulk shall correspond in quality and condition with the sample. As yet there has been no adjudication by this Court of the question of warranty upon sales by sample, but the spirit of its decisions has been against the ''modern innovation'' of implied warranties, and in favor of the common law rule, ''that in sales of personal property, the seller is not answerable for any defects in the quality or condition of

21     v.19

the article sold, without an express warranty or fraud."
*Johnson vs. Cope,* 3 *H. & J.,* 89. *Hyatt vs. Boyle,* 5 *G. &
J.,* 118. *Taymon vs. Mitchell,* 1 *Md. Ch. Dec.,* 499. *Osgood vs. Lewis,* 2 *H. & G.,* 495. For an able vindication
of the common law rule against the modern spirit of innovation, see *McFarland vs. Newman,* 9 *Watts R.,* 56; *Borrekins vs. Bevan,* 3 *Rawle,* 44; 2 *Kent's Com.,* 480, *marg.
note (a.)* The latest decision of this Court, upon questions
of implied warranties, *(Hyatt vs. Boyle,)* when cited by
other Courts, is cited as vindicating the strict common law
rule. *Barnett vs. Stanton, et al.,* 2 *Ala.,* 185.

The doctrine denied by our first proposition, was supposed to have been fully established in the State of New
York, but, in its progress, it encountered determined opposition from the judges, who preferred the common law
rule. If the doctrine has ever been adopted by the Courts
of any other' of the United States, it will be found that
they rest the rule either upon the New York decisions, or
confessedly derive it from the civil law. But in New York,
where the doctrine was established for the first time in this
country, it has been since exploded. *Waring vs. Mason,*
18 *Wend.,* 434, and also 441 and 447. *Moses vs. Mead,* 1
*Denio,* 385. *Hargous vs. Stone,* 1 *Selden,* 75. *Berine vs.
Dord,* 1 *Selden,* 95. *Berine vs. Dord,* 4 *Duer,* 72. In
Massachusetts and Pennsylvania, the rule is, that a sale
by sample implies a warranty, not of correspondence in
quality and condition, but that the article in bulk is the
same in *kind* as the sample. *Bradford vs. Manly,* 13 *Mass.,*
139. *Henshaw vs. Robins,* 9 *Metcalf,* 86. *Hastings vs.
Lovering,* 2 *Pick.,* 219. *Fraly vs. Bispham,* 10 *Barr.,* 320.

2nd. That even if a sale by the exhibition of samples,
be, as a general rule, an implied warranty of a correspondence in quality and condition, between the sample and
the article sold, yet when the sale (as in this case) is made
by the exhibition of samples selected by a State tobacco

inspector, the rule does not apply.  The Acts of Assembly regulating the inspection of tobacco, revived by the Act of 1852, ch. 360, are: 1801, ch. 63; 1804, ch. 85; 1820, ch. 188; 1821, ch. 194; 1822, ch. 172; 1823, ch. 165; 1828, ch. 164; 1829, ch. 223; 1833, ch. 228; 1834, ch. 198; 1835, ch. 123; 1836, ch. 191.  As the most important, the following are particularly referred to: 1801, ch. 63, secs. 6, 7, 13, 18, 19, 21, 22, 26 and 27; 1823, ch. 165; 1821, ch. 194, (relating to samples;) 1819, ch. 95.

These laws elaborate a system of inspection, the chief design of which is to protect the reputation of our tobacco market, and to secure the purchaser, foreign and domestic, against all deception and risk as to the quality of the tobacco purchased by him, and its freedom from trash.  This security is furnished by the inspector's oath of fidelity in inspecting the bulk and drawing the samples, his bond, and the liability to which he is subjected by the Act of 1801, ch. 63, secs. 21 and 22, and the penalties imposed for altering his marks, or forging his manifests or notes, secs. 10 and 26.

If the doctrine denied by our first proposition be law, it is insisted, upon the foregoing authorities, that it is not a doctrine which ought to be extended.  There is no authority which sanctions the application of the doctrine to a sale by such samples as those in this case, nor can the *principle* on which the doctrine rests apply to such sale.  That principle is, that the exhibition of a sample at the time of sale, is a symbolic affirmation, or representation, which amounts (as we say, in contravention of the sound rule of the common law) to a warranty.  But when the samples exhibited to the purchaser are visibly those of a State inspector, it is insisted that the affirmation involved in the mere act of exhibiting the samples, cannot be more than this: "These are the samples selected by a State tobacco inspector."

The warranty, therefore, if there be one, cannot be more extensive than the affirmation involved in the act.

3rd. That the 2nd prayer of the appellants correctly propounds the law of this State. *Osgood vs. Lewis,* 2 *H. & G.,* 522. *Batturs vs. Sellers,* 6 *H. & J.,* 251. *Hyatt vs. Boyle,* 5 *G. & J.,* 118. *Gardiner vs. Gray,* 4 *Campbell R.,* 143. *Myer vs. Everth, Ibid.,* 22. *Reed vs. Wood,* 9 *Vt. R.,* 287. *Yates vs. Pym,* 6 *Taunt.,* 446. *Ch. on Cont.,* 400. The bill of parcels offered in evidence describes the tobacco sold by the appellants to the appellee, as ''2 *hhds. heavy Clarksville tobacco.*'' It is clear, upon the foregoing authorities, that the only warranty by the appellants was, that the article sold should answer the description in the bill of parcels, and it is not pretended that it was other than ''*heavy Clarksville tobacco.*''

4th. That the evidence in the first bill of exceptions was improperly rejected. It is difficult to perceive the ground of the objection to the proof of the usage in this case. The definition given us by Judge Story, of the true and appropriate office of an usage or custom, seems exactly to embrace this case. *Schooner Reeside,* 2 *Sumn. R.,* 569. It may, indeed, be urged, that proof of usage is inadmissible to contradict a settled doctrine of law. *Edie, et al., vs. The East Ind. Co.,* 2 *Bur.,* 1222 and 1224. *Frith vs. Barker,* 2 *Johns. R.,* 334. *Brown vs. Jackson,* 2 *Wash. C. C. R.,* 25. But, in this case, the usage should be received, because the law is unsettled, in order (in the language of Story) ''to interpret the otherwise indeterminate intentions of the parties.'' The weight of authority is against the doctrine, that usage cannot be proved to contradict a settled principle of law. 2 *Phil. Ev.,* 730, (*Cowen, Hill & Edwards'* notes.) *Middleton vs. Heyward,* 2 *N. & McC. R.,* 9. *Heyward vs. Middleton,* 3 *McC. R.,* 121. *Snowden vs. Warder,* 3 *Rawle,* 101. *Gordon vs. Little,* 8 *Serg. & Rawle,* 550 and 554. The appellants' counsel also cited *Budd vs.*

*Fairmaner*, 21 *Eng. C. L. Rep.*, 217. *Ormrod vs. Huth*, 14 *Mees. & Wels.*, 651. *Baird & Co. vs. Matthews*, 6 *Dana*, 131. *Clintsman vs. Northrop*, 8 *Cowen*, 46.

*Brown & Brune* and *Louis C. Fischer*, for the appellee, argued:

I. That the Court properly ruled that the evidence proposed to be given by the appellants, through the witness, Ahrens, and objected to by the appellee, was inadmissible. *Eddie vs. East India Co.*, 2 *Bur.*, 1218, 1220. *Hibbert vs. Shee*, 1 *Camp.*, 113. *Oelrichs vs. Ford*, 23 *Howd.*, 61, 64. *Schooner Reeside*, 2 *Sumn.*, 569. *Foley & Woodside, vs. Mason*, 6 *Md. Rep.*, 49, 50. *Frith vs. Barker*, 2 *Johns. Rep.*, 335. *Thompson vs. Ashton*, 14 *Johns. Rep.*, 317. *Sewell vs. Gibbs*, 1 *Hall*, 602. *Homer vs. Dorr*, 10 *Mass.*, 28. *Eager vs. Atlas Ins. Co.*, 14 *Pick.*, 143, 144, 145, 146. *Perkins vs. Franklin Bank*, 21 *Pick.*, 485. *Cox vs. Heisley*, 19 *Penn. R.*, 245. *Wetherill vs. Neilson*, 20 *Penn. R.*, 448. *Beckwith vs. Farnum*, 5 *R. I.*, 239. *Petty vs. Gayle*, 25 *Ala.*, 472. *Barlow vs. Lambert*, 28 *Ala.*, 708. 3 *Kent*, 326. *Clintsman vs. Northrop*, 8 *Cowen*, 46.

II. That the appellants' first prayer was properly refused:

1st. Because the sale by the warehouse samples, furnished by the State inspector, of the tobacco sold by the appellants to the appellee, was a warranty by the appellants that the tobacco and the samples should correspond in quality. *Hibbert vs. Shee*, 1 *Camp.*, 113. *Bradford vs. Manly*, 13 *Mass.*, 142, 144. *Williams vs. Spafford*, 8 *Pick.*, 250. *Oneida Man. Co., vs. Lawrence*, 4 *Cowen*, 444. *Gallagher vs. Waring*, 9 *Wend.*, 26. *Beebee vs. Robert*, 12 *Wend.*, 418.

2nd. Because the said prayer entirely disregards the warranty in the bill of parcels, that the tobacco sold was "*heavy Clarksville tobacco*," and if a sale by inspection

samples alone, should be held not to warrant the quality, this certainly should not relieve the appellants from the duty of proving that the tobacco sold was "*heavy Clarksville tobacco*," and not scrapings or dirt, and particularly as the bill of parcels representing the goods sold to be of that description of tobacco, was given in evidence by the appellee without objection, and was relied on by the appellants, in their second prayer, as the only evidence of the contract. *Leopard vs. Ches. & Ohio Canal Co.,* 1 *Gill,* 229. *Stockton vs. Frey,* 4 *Gill,* 421. *State vs. Milburn,* 9 *Gill,* 102. *Osgood vs. Lewis,* 2 *H. & G.,* 522, 527.

III. The appellee will contend that the second prayer was properly refused, because:

1st. The bill of parcels given in evidence, was not the only evidence of the contract. The exhibition of the samples was also an important part of the contract, whether their exhibition constituted a warranty of quality under the general rule of law, or showed that the purchaser relied only on the fidelity of the inspector, by reason of a usage or rule of law applicable to this particular kind of sample. It is also to be noticed that there is no repugnancy between the representations of quality afforded by the bill of parcels and the samples, the former warrants the tobacco to be "*heavy Clarksville tobacco*," and the samples were proved to have been Kentucky tobacco, of a good or fair quality. *Osgood vs. Lewis,* 2 *H. & G.,* 522, 524, 525, 526, 527. *Hyatt vs. Boyle,* 5 *G. & J.,* 118. *Harris vs. Johnston,* 3 *Cranch,* 312, 318. *Bradford vs. Manly,* 13 *Mass.,* 142. *Hazard vs. Loring,* 10 *Cush.,* 267, 268.

2nd. Because the second prayer not only asserts that the bill of parcels is the only evidence of the contract, and that it does not contain a warranty that the tobacco should correspond with the representations in itself, but also declares that by reason of the bill of parcels, the appellants are exempted from liability for any defect in the quality of the

tobacco, or for any want of correspondence between its quality and that of the samples, as well as from all liability for or on account of any scrapings or trash intermixed with the tobacco. *Osgood vs. Lewis*, 2 *H. & G.*, 522. *Hyatt vs. Boyle*, 5 *G. & J.*, 119. *Hastings vs. Lovering*, 2 *Pick.*, 219. *Henshaw vs. Robins*, 9 *Met.*, 83 to 88.

COCHRAN, J., delivered the opinion of this Court:

This is an appeal from a judgment obtained by the appellee, in a suit to recover damages resulting to him from the non-correspondence of two hogsheads of tobacco with samples by which he had purchased it from the appellants. At the trial below, the appellants reserved three exceptions, presenting the following questions: 1st, whether evidence showing a custom of tobacco dealers in Baltimore, of buying and selling tobacco in bulk, by samples prepared by the State inspectors, without insuring correspondence in quality, was admissible; 2nd, whether, in a sale of tobacco by a sample drawn by the State inspector, there is, in law, a warranty that the quality in bulk corresponds with the sample; and 3rd, whether, in the sale made, the bill of parcels designating the kind of tobacco sold as *"heavy Clarksville tobacco,"* amounts to a warranty of the quality.

As the proposition presented by the 1st exception depends somewhat upon that involved in the 2nd, we shall, in our consideration of them, reverse the order in which they are stated. The determination of the question presented by the 2nd exception, upon the authority of adjudicated cases, is somewhat difficult. The doctrine that a warranty of quality is implied, in a sale by sample, is not favored by the common law, and, at most, has a drifting and uncertain character. Strictly speaking, a contract of sale by sample, is not a warranty of quality, but an agreement of the seller to deliver, and of the buyer to accept,

goods of the same kind and quality as the sample.    The identity of the goods sold in kind, condition and quality, with that of the sample is of the essence of the contract; and where the goods sold do not correspond with the sample, there would seem to be no performance of the contract. *Young vs. Cole*, 3 *Bing. N. C.*, 724.    *Mondel vs. Steele*, 8 *M. & W.*, 858, 871.    8 *Pick.*, 250.    13 *Mass.*, 139.    *Berine vs. Dord*, 1 *Seld.*, 93.    *Hargous vs. Stone, Ib.*, 73.    *Waring vs. Mason*, 18 *Wend.*, 425.    1 *Smith's L. Cases, 5th A. Ed.*, 256, 257, 258.    The rule recognized in these cases, as governing sales by sample, seems to be founded on, or to be a simple application of the principle, that to fulfil a contract of sale, the seller must deliver that which he has agreed to sell, and that if he does not, the purchaser may rescind the contract, or receive the goods and claim a deduction for their relative inferiority in value.    In order that this principle may be applied, it is necessary, in making the sale, that the sample should be so used between the buyer and seller, as to express or become a part of the contract; or, in other words, that the sample should amount to, and take the place of, an express averment by the seller of the condition and quality of the goods sold, upon which the buyer relies in making the purchase.    The mere exhibition of a sample by the seller, and examination of it by the buyer, does not amount to such an averment, unless, from all the facts or circumstances in the case, it can be presumed that an understanding is arrived at between the parties, that the bulk is to correspond with the sample.    1 *Seld.*, 73, 93.    18 *Wend.*, 425, 434.    The reasonable deduction from these cases is, that to effect a sale by sample, so as to bind the seller for a correspondence in bulk, it must be shown that the seller adopts the sample as his own description of the bulk, and that the buyer concludes the purchase upon the faith and credit of the description so given.    Upon this theory, it is obvious that in making

sales, samples may be exhibited and examined without implying, as a part of the contract of sale, any obligation that the bulk shall correspond with the sample.

In cases where both buyer and seller deal with a specific article or lot of merchandize by sample, and the buyer knows, or from the usage of the trade, or circumstances in the case, is authorized to presume that the seller has no knowledge of the bulk, other than that afforded by an inspection of the sample, an obligation for a correspondence of the bulk, could not reasonably be implied as a part of the contract, for the buyer could not, in such a case, assume the exhibition or use of the sample to be a representation of quality by the seller. The fact that the seller's ignorance of the quality of the bulk is known to the buyer, is sufficient to put him on his guard, and enable him to protect himself by an actual inspection of the bulk, if that be possible, or by an express stipulation. With a knowledge of the bulk equal to that of the seller, there would seem to be but little or no reason for permitting the buyer to hold the seller, whom he knows to be ignorant of the actual quality and condition of the bulk, as contracting by implication for a correspondence of it with the sample. Strictly speaking, a sale by sample would seem to imply an obligation on the part of the seller for correspondence in condition and quality, only when the buyer knows, or is justified in assuming that the seller, or some one acting for him, or for whose act, in that respect, the seller could be held responsible, has exercised a discretion in selecting the sample. In cases where the sample is drawn and prepared, without the exercise of such a discretion, in a mode prescribed by law, the reason against the implication of an obligation for a correspondence of the bulk with the sample is still stronger, for both buyer and seller are presumed to have a knowledge of the mode of drawing the

sample, and of the fact that from the mode of drawing, it may not truly represent the condition and quality of the bulk.

The samples of the tobacco sold in this case, were drawn and prepared by a State inspector, in the mode prescribed by the statutes regulating tobacco inspections, and although the appellants are not shown to. have had other knowledge of the tobacco than that derived from the samples, the custom of dealers in buying and selling by such samples was clearly proved. Upon this statement of facts, we must presume that the appellants had no knowledge of the true quality of the tobacco at the time it was sold, and that they, as did the appellee, dealt with the bulk upon the credit of the samples alone. The samples were prepared by the State inspector, and his agency, in performing that duty, was as much in behalf of the buyer as the seller; and neither buyer nor seller has cause of complaint nor right of redress, either from the other, for any mistake as to condition or quality, if, with mutual knowledge and good faith, they buy and sell upon the credit of samples thus obtained. We think the appellants' first prayer should have been granted, as, in our opinion, there was no implied obligation or warranty on the part of the appellants, that the bulk of the tobacco sold should correspond in quality with the samples exhibited by them in making the sale to the appellee.

Upon this view of the point presented by the 2nd exception, the question as to the admissibility of the evidence contained in the 1st, becomes immaterial. The testimony, if admitted, would only have proved a usage among tobacco dealers, in strict conformity with what we understand to be the law in buying and selling tobacco by samples prepared by the State inspectors. We think the evidence offered was improperly rejected, although its admission could not change the legal result.

Upon the 3rd exception, it may be observed that the record contains no evidence that the tobacco sold was not of the kind designated in the bill of parcels. If the fact of a non-correspondence in kind were material to the case of the appellee, it was his duty to show it by competent proof, but he appears by the record only to have offered evidence to show a non-correspondence in quality, as the ground of his claim for damages. The terms used in the bill of parcels, designating the subject of the sale as *"heavy Clarksville tobacco,"* must be understood as descriptive of kind, and not of quality, for in that sense alone have they an intelligible and certain meaning. Although the evidence shows that "trash and scrapings" were intermixed with the tobacco sold, it does not appear to have been so affected or changed in character by the intermixture as to make any other designation than that contained in the bill of parcels proper or necessary. The obligation presumed from a bill of parcels designating merchandize sold as of a particular kind, is that the seller shall deliver goods of the kind mentioned, but, ordinarily, it imposes on him no obligation as to the quality. In such a case, the bill or account of sale, stating the kind of goods sold, does not imply a warranty of quality, nor can it have that effect without terms stating or referring to the quality, in which case the warranty is expressed, and not implied. This rule was recognized in the cases of *Osgood vs. Lewis*, 2 *H. & G.*, 522, and *Hyatt vs. Boyle*, 5 *G. & J.*, 118, and seems to be supported by the general current of authority in other States. 2 *Pick.*, 214. 18 *Pick.*, 1. 3 *Rawle*, 168. 10 *Barr.*, 320. Upon these authorities, it is clear that the only warranty by the appellants, implied from the bill of parcels, was that the tobacco sold should be of the kind designated, and we think that there was error in refusing to grant the instructions sought by the appellants, by the

prayer contained in their 3rd exception.    The judgment must be reversed, without a *procedendo*.

*Judgment reversed.*

( Decided December 5th, 1862.)