PICKRELL & CRAIG COMPANY v. WILSON WHOLESALE COMPANY.

(Filed 15 September, 1915.)

**1. Vendor and Purchaser—Contracts—Parol Evidence—Warranty Implied.**

Where the written contract, signed by the purchaser, specifies that a cap sold for fruit jars will fit any "Mason jar," and that the terms of the contract shall not be varied by any promise or agreement not specified in the written order, a representation made by the sales agent, to the purchaser, at the time of a demonstration by him of its truth, and as an inducement to buy, that the cap sold would fit all of the Mason jars in his store, does not violate this special stipulation.

**2. Vendor and Purchaser—Sale by Sample—Implied Warranty—Breach—Evidence.**

While a warranty of goods which are sold in bulk by sample implies only that the bulk will come up to the sample, when the seller adopts the sample as his own description of the bulk, upon which the purchase is made, this rule does not apply when the sample is only used by the seller to demonstrate that his wares will accomplish a certain purpose, which he warrants them to do; for then it is open to the purchaser to show that the wares were not as represented, though the bulk corresponds in kind and quality with the sample, it being more than a sale by sample.

**3. Same—Demonstration by Sample.**

Where a certain kind of cap for sealing fruit jars is sold under a written and signed order, with the warranty that they will fit any "Mason jars," and the vendor's salesman has guaranteed that they would fit any Mason jars in the purchaser's store, and actually fitted several of the caps to the jars to prove that they would do so, it is competent for the purchaser to show that he had, at the time a quantity of Ball-Mason jars which the cap would not fit or properly seal; and upon conflicting evidence the issue should be submitted to the jury, there being evidence that the caps would not fit all Mason jars, as warranted.

APPEAL by defendant from *Carter, J.,* at June Term, 1915, of WILSON.

This action was brought to recover $130 and interest due for a lot of White Crown jar caps sold and delivered to the defendants. The

evidence tended to show that the plaintiffs both verbally and in the written order of sale represented and warranted that the caps would fit any Mason jar, in which the defendants dealt, and to convince the defendants that this was true, plaintiffs' agent, before the order was given, fitted several of the caps he then had in his possession to Mason jars selected from defendants' stock. In the body of the order are these words: "White Crown Caps. Self-sealing. Fits any Mason Jar. Experience not necessary." Defendants signed the order and delivered it to plaintiff's agent, and afterwards, and before the caps were received by the defendants, the plaintiffs sent out samples of the caps, as corresponding with those to be shipped. These were tried by the agent of defendants who gave the order, and found to be defective, in that they would not fit many of the Mason jars in defendants' stock. This was due to the fact that the Ball-Mason jars, which defendants carried in their stock, are made to receive the cap and seal at the shoulder, while the White Crown jar caps seal at the top, and the value of the cap for making an air-tight seal depended upon the smoothness of the upper surface, which was immaterial if the sealing was done at the shoulder of the jar as in the case of the Ball-Mason jars. There was evidence that "all Mason jars are of exactly the same pattern and sealed in the same way as those made by Ball Brothers." It is stated in the case that plaintiffs' witness Finis Fox, while on the stand, "proceeded to seal the Mason jars in question with the caps shipped to defendants." Defendants objected to this evidence.

When defendants discovered that the testing samples sent out by the plaintiffs would not fit many of the Ball-Mason jars in their stock, they refused to receive the shipment, and, therefore, this action was brought to recover the price agreed to be paid for the goods.

The court charged the jury as follows: "It appears from the evidence in this case that these goods were sold by sample. There is no evidence in the case that the goods shipped were not up to the sample, and there is no evidence of any other concealment. The court, therefore, instructs you that you will answer the issue $130, with interest from 15 May, 1913, if you believe the evidence in the case. Of course, if you don't believe the evidence, you will answer the issue 'Nothing.'"

The jury returned a verdict in favor of the plaintiffs for $130, with interest from 15 May, 1913. Judgment was entered thereon, and defendants appealed.

*F. D. Swindell* for plaintiffs.
*Woodard & Hassell* for defendants.

WALKER, J., after stating the case: The court held that this was a sale of goods by sample, ignoring the express terms of the written con-

tract, which warranted that the goods should be of a certain kind, or caps, that would fit *any* Mason jar. The prior negotiations of the parties were merged in the written contract, which provided that the sellers would ship the goods "on terms and conditions specified below," one of which was that the caps would fit any Mason jar, and another is, that "No promise or agreement is valid unless specified on this order," and still another, that "No salesman has authority to alter terms or conditions printed on this contract, or to promise anything that is not printed on our contracts." This was the contract, and the only one between the parties recognized by the plaintiff. It is well settled that where parties have reduced their contract to writing, the written instrument itself is the exclusive evidence of it, and neither of the parties will be permitted to vary or contradict its terms by parol. 9 Cyc., 763; *Moffitt v. Maness,* 102 N. C., 457. There is no reference in this contract to a sale by sample. We imagine that if it were to the advantage of the defendants to restrict the inquiry here to what occurred between the two agents prior to the signing of the order, the plaintiffs would have insisted upon a strict adherence to the terms of the contract as expressed in the writing; and well could they have done so.

There was some evidence of the breach of the contract or condition that the caps would fit *any* Mason jar. It is stated in the record that plaintiffs' witness "proceeded to seal the jars in question with the White Crown jar caps sold by the plaintiffs," but this expression is not very clear, and he may have referred, and perhaps did refer, to jars known as Mason jars and of the same kind as those kept by defendants in their stock for sale, and did not intend to say that he fitted the caps to the particular Mason jars which defendants then had in stock. But whatever his meaning was, and whether or not the caps used by the witness did fit the jars also used by him, which is not clearly made to appear, there was some evidence that the caps shipped to defendant did not fit the Mason jars in defendants' stock, as plaintiffs sent out a lot of samples, upon the implied representation, at least, that they corresponded exactly with those to be shipped, and for the purpose of testing the truth of their representation or warranty that those to be shipped would fit any Mason jars.

But apart from this consideration, it is not to be assumed that every sale where a sample is shown is a sale by sample. There must be an understanding of the parties, express or implied, that the sale is by sample. Tiffany on Sales, p. 174. The Court in *Gunther v. Atwell,* 19 Md., 157, at pp. 167 and 168, well stated the rule and the reason for it: "Strictly speaking, a contract of sale by sample is not a warranty of quality, but an agreement of the seller to deliver, and of the buyer to accept, goods of the same kind and quality as the sample. The identity

of the goods sold in kind, condition, and quality with that of the sample is of the essence of the contract; and where the goods sold do not correspond with the sample, there would seem to be no performance of the contract. The rule recognized in the cases as governing sales by sample seems to be founded on or to be a simple application of the principle that, to fulfill a contract of sale, the seller must deliver that which he has agreed to sell, and that if he does not, the purchaser may rescind the contract, or receive the goods and claim a deduction for their relative inferiority in value. In order that this principle may be applied, it is necessary, in making the sale, that the sample should be so used between the buyer and seller as to express or become a part of the contract; or, in other words, that the sample should amount to and take the place of an express averment by the seller of the condition and quality of the goods sold, upon which the buyer relies in making the purchase. The mere exhibition of a sample by the seller, and examination of it by the buyer, does not amount to such an everment, unless, from all the facts or circumstances in the case, it can be presumed that an understanding is arrived at between the parties that the bulk is to correspond with the sample. Citing several cases. The reasonable deduction from these cases is that to effect a sale by sample, so as to bind the seller for a correspondence in bulk, it must be shown that the seller adopts the sample as his own description of the bulk, and that the buyer concludes the purchase upon the faith and credit of the description so given. Upon this theory, it is obvious that in making sales samples may be exhibited and examined without implying, as a part of the contract of sale, any obligation that the bulk shall correspond with the sample. *Gunthrell v. Atwell, supra; Day v. Raguet,* 14 Minn., 273; *Hargous v. Stone,* 5 N. Y., 73.

There is evidence in this case that the caps were used by plaintiffs' agent in the beginning of this transaction, not for the purpose of selling other caps by them as samples, but for quite a different purpose, and that was to demonstrate to the defendants that the White Crown caps would fit any Mason jar. This will appear from the testimony of defendants' witness N. T. Peele, who said: "Plaintiffs' salesman represented that the White Crown jar caps sold by the plaintiffs, as jobbers, would fit any Mason jar. He then and there proceeded to demonstrate this fact by sealing a number of Mason jars taken from defendants' stock with the White Crown jar caps in his possession. After witnessing the demonstration aforesaid, defendants' employee, N. T. Peele, signed an order on a printed order form in which the terms and conditions of the purchase were set forth." But when the sale is by sample, it is implied in law that the bulk shall correspond in kind and quality with the sample, and the reason for this implication is that there is no opportunity

for a personal examination of the bulk. Tiffany on Sales, p. 174. There was evidence that the caps exhibited and used by plaintiffs' agent for the alleged demonstration of their quality and fitness for the particular use mentioned at the time did not correspond with the standard of comparison so used, for the plaintiffs' witnesses testified that many of the caps sent out by the plaintiffs were tried on the Mason jars of the Ball Brothers type, which were carried in defendants' stock of goods, and they did not fit, nor would they seal perfectly or as the agent of plaintiffs represented they would.

The demonstration by plaintiffs' witness at the trial may have been very impressive, and (perhaps) convincing, but its weight as evidence was for the jury, and, besides, it should not have been considered to the exclusion of other evidence in the cause.

In this state of the evidence we are of the opinion that there was a conflict, and it was. erroneous to charge the jury that, even if they believed the evidence, their verdict should be for the plaintiff.

There was error, therefore, in the trial of the case.

New trial.