J. W. ANDERSON COMPANY, INCORPORATED, v. TOMLINSON CHAIR MANUFACTURING COMPANY, INCORPORATED.

(Filed 28 February, 1934.)

Sales F e—Goods must be of same kind, quality, condition and color as sample where these elements are of essence of contract.

> In the sale of goods by sample the seller must deliver goods of the same kind, condition, quality, design and color as the sample where any or all of these elements are of the essence of the contract, and an instruction by the court that the goods must be "reasonably similar," "substantial duplication," etc., is too broad, and upon exception ·thereto the purchaser will be awarded a new trial.

CIVIL ACTION, before *Sink, J.,* at October Term, 1933, of GUILFORD.

The plaintiff is a corporation with its principal office in Rock Hill, South Carolina, and is engaged in the business of manufacturing tapestries. The defendant is a North Carolina Corporation with its principal place of business at High Point and is engaged in the business of manufacturing and selling furniture.

On 21 November, 1931, the defendant gave an order to the plaintiff for the manufacture and shipment of certain tapestries to be used in manufacturing furniture. The contract specified "100 pieces No. 334 tapestry. . . . Ship 1 January, five pieces, each of colors 334, 3343, 3342, 3344, then follow with 10 pieces each of colors 334, 3343, 3342, 3344," etc. The price specified in the contract was 70 cents per yard. The evidence tended to show that the order was solicited by an agent of plaintiff who said: "No. 334 was the fabric in question. It was a· tapestry weave and designates to me Tomlinson Chair Manufacturing Company's number of the fabric. They gave me this sample. In the general work of my solicitation, I came and asked them to show me some samples of their tapestry, and asked them to let me duplicate some of them. They gave me eight or ten different samples to analyze for prices. This particular pattern No. 334, I gave to J. W. Anderson Company, and accepted the order subject to the approval of J. W. Anderson Company. The sample showed a floral design made up in colors. The samples were in rust, taupe, green, and possibly brown. . . . The samples have the same pattern and same warp, with filling being the predominating color. Sample No. 334 given me by Tomlinson Chair Manufacturing Company is predominating green. . . . I knew we had to furnish this green in a commercial match. . . . When I took the order, I took an order to make a· piece of tapestry with the same green color in it. It was to be like the sample. . . . You can't get a perfect match. . . . They could use what they had with this as

it was a commercial match, and it should be all right, but not side by side on the same piece of furniture. . . . There is a difference between it and the sample given by Tomlinson Chair Manufacturing Company. In the sample given me it looks like a green and rust together. The leaf immediately above the tulip in the sample furnished by Tomlinson Chair Manufacturing Company looks like green and rust. The green leaf above the tulip in the manufactured product is more of a green tint than green color. It is different. The same thread that goes through the leaf immediately above the tulip goes through the tulip. I would say the tulip is a good match. This leaf is different. That can be readily seen. . . . The tulip on the rust sample measures two and five-eights inches and the tulip on the manfactured product measures 2½ inches. . . . You could not match these two stems on the same piece of furniture any more than you could match the coloring. . . . There is a difference in the color of the green leaves on this manufactured product and on the sample. The stem of the flowers and the tendrils are not matched with the sample. They are a little bit smaller. . . . This gold flower on the manufactured product is smaller than on the sample. The sample is three inches. The manufactured product is two and seven-eights inches. . . . The order was taken on 21 November, and five pieces shipped 1 January. I do not know when the samples were finished. The next time I heard from it was when Joe Howerton phoned me to hold up all contracts. He said he had gotten word from Chicago and that Mr. Tomlinson was there. The next I recall when Mr. Anderson came to High Point to inspect the goods and made some complaint on account of shades. They found it was off-color and they did not take it. . . . Mr. Tomlinson rejected the goods that were here because he said they did not match."

J. W. Anderson, president of plaintiff company, testified: "We shipped five pieces of each color, and maybe a little more." The defendant wrote a letter to the plaintiff stating that "we are obliged to decline to accept goods shipped on our order 21 November, owing to your failure to match colors properly." A witness offered by plaintiff, who had been a dyer for twenty-three years, testified that "the match between the Tomlinson and Anderson is a good one. In 14 there is a little difference. . . . Exhibit 7 and 12 is a good match, and thirteen is away off. Exhibit 6 and 11 is a good match, and also 15. Exhibit 5 and 9 is off a little bit and 16 is off a little bit. The green thread out of the manufactured product and the green thread out of the sample are not the same. Those two threads out of that sample and the manufactured piece are not the same color but a good match. This one is a little off. I am an expert of many years experience and that manufactured product and the sample are not the same. There is a difference, but I will not call it extreme."

Another expert witness for plaintiff, who was a textile designer, said: "I think Exhibit 6 and 11 are a very good match. All three pieces are a good match in the design. It is bound to be alike because it came from the same set of cards. No. 8, No. 10, and No. 14 are good matches as to designs. It is expensive to pick out the thread and get a perfect match. It is never done. It is not generally done in tapestry of this grade."

The evidence for the defendant tended to show that the tapestry in controversy was intended for upholstering furniture, to cover back, seat, cushion and sides of chairs. A witness for defendant said: "I was in Chicago when I saw the sample that came from J. W. Anderson Company. That was during the first two weeks in January. I examined this sample to see if it was a duplicate of the tapestry we ordered. The color was off between the manufactured product and sample and we turned it down in Chicago. . . . We could not use it on the same suite of furniture or piece of furniture. We could not use a piece that did not match in color and size of design. The customer would not accept it. . . . It was turned down at the market because of the color. The green is a pretty good match, but is off-color." Another witness for defendant said: "I find there is quite a bit of difference in the color of those two pieces. One is more of an orange rust and the other more of a henna rust. One cannot be used as a duplicate of the other. . . . There is a difference in the color of all three pieces handed to me."

There was evidence that after the defendant refused to take the product that the plaintiff sold the material on the open market for 45 cents per yard, thereby sustaining an alleged loss of $1,250.

The cause was tried in the municipal court of High Point upon the following issue: "What damages, if any, is plaintiff entitled to recover of the defendant?" The jury answered the issue $750.00. There was an appeal to the Superior Court upon exceptions and the judgment of the municipal court was affirmed. From such judgment the defendant appealed to the Supreme Court of North Carolina.

*Thomas Turner, Jr., and G. G. Dickson for plaintiff.*
*Roberson, Haworth & Reese for defendant.*

BROGDEN, J. What duty is imposed upon the manufacturer of an article for sale by sample?

The judge of the municipal court charged the jury as follows:

(1) "Now, the court charges you in a case of this nature where a contract is entered into between a buyer and a seller, where the goods must be manufactured, and where there is a sample presented for the

manufacture of the goods, that the manufacturer of the goods who contracts to manufacture the goods in accordance with the sample presented, warrants that the goods that he manufactures will be in a reasonable compliance or will be reasonably similar to the sample that is presented to him, that there will be a substantial duplication of the sample."

(2) "Now, the burden of proof in this case is upon the plaintiff to satisfy you by the greater weight of the evidence that it manufactured the goods which came up to the sample to a substantial and reasonable degree, to a degree that the goods made as a result of its receiving the sample could be used in the place of the goods in the sample; that there was a reasonable and substantial similarity in the goods manufactured and the sample that was presented to it at the time the contract was entered into."

(3) "That there was a duty on the plaintiff company to manufacture a fair specimen; that is, that it was a substantial duplication, a reasonable duplication in design, color and quality of the sample furnished to it."

(4) "And if you find that the goods were capable of being used as a substantial duplicate of the goods from which the samples came, and that there was not a material difference or variation in the goods made and shipped by the plaintiff and that represented by the samples, then the court charges you that would be a compliance with the contract and a refusal on the part of the defendant to accept the goods would be a breach of the contract."

A discussion of the various aspects of the law of sales by sample, together with the application of accepted principles to given facts, may be found in *Jorgensen v. Gessell Pressed Brick Co.,* 141 Pac., 460; *Greenwood Cotton Mill v. Tolbert,* 89 S. E., 653; *Perine Machinery Co. v. Buck,* 156 Pac., 20. All the foregoing cases are reported in Ann. Cas., 1917C, 309 to 343.

The Supreme Court of North Carolina has spoken upon the subject in *Main v. Griffin,* 141 N. C., 43, 53 S. E., 727, and *Pickrell v. Wholesale Co.,* 169 N. C., 381, 86 S. E., 187. Quoting with approval from another jurisdiction, this Court said in the *Pickrell case, supra:* "Strictly speaking, a contract of sale by sample is not a warranty of quality, but an agreement of the seller to deliver, and of the buyer to accept, goods of the same kind and quality as the sample. The identity of the goods sold in kind, condition, and quality with that of the sample is of the essence of the contract; and where the goods sold do not correspond with the sample, there would seem to be no performance of the contract. The rule recognized in the cases as governing sales by sample seems to be founded on or to be a simple application of the principle that, to

fulfill a contract of sale, the seller must deliver that which he has agreed to sell, and that if he does not, the purchaser may rescind the contract, or receive the goods and claim a deduction for their relative inferiority in value." Consequently the standard prescribed in this jurisdiction in sales by sample is that the seller must furnish "goods of the same kind and quality as the sample. The identity of the goods sold in kind, condition and quality with that of the sample is of the essence of the contract." Obviously, if color was of the essence of the contract, the same rule would require that articles of the same kind, quality, condition and color should be furnished in order to discharge the obligation of the contract.

The municipal judge used the expression "reasonable compliance," or "reasonably similar," "reasonable and substantial similarity," "a fair specimen," "substantial duplication," or "reasonable duplication in design, color and quality." These instructions, tested by the standard prescribed in our decisions, are too broad. It is apprehended that the correct rule as pronounced by this Court is that in sales by sample the seller must deliver goods of the same kind, condition, quality, design and color where any or all of these elements are of the essence of the contract.

In view of the conclusion reached, it is not deemed necessary to discuss other exceptions in the record.

New trial.