## L. A. LOCKWOOD, JR., INC. *vs.* E. GROSS AND COMPANY, INC.

First Judicial District, Hartford, May Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

When all the subordinate facts attending a contract of sale are detailed in the record, the question whether the sale was one by sample or not, is one of law, and the conclusion of the trial court is reviewable on appeal.

The mere exhibition of a sample in the negotiations attending a contract of sale, and its inspection by the buyer, does not make the sale one by sample, unless the parties have manifested an intention to contract that the bulk should be like or correspond with the sample; and obviously there can be no such intention if the seller, as in the present case, expressly refuses to make a sale by sample.

Correspondence between the goods delivered and the sample, necessarily depends upon the nature of the goods which are the subject of the contract. As applied to a definite and known object, correspondence would be a practical identity in quality between the two; while as applied to a subject-matter such as cotton-waste sweepings, which was the subject-matter of sale in the present case, it would be substantial conformity in quality.

A contract of sale once made, cannot thereafter be changed to one of a sale by sample, unless the parties mutually agree to such change.

The plaintiff offered evidence of a custom or usage in the trade not to sell low-grade cotton-waste sweepings by sample, which was excluded. *Held* that such evidence was admissible as a circumstance tending to show that the parties did not contract to make a sale by sample.

Section 4682 of the General Statutes, as to what is involved in a sale by sample, is merely a reaffirmance of the common law of this State.

Argued May 2d—decided July 27th, 1923.

ACTION to recover damages for the alleged wrongful refusal of the defendant to accept and pay for rags and paper stock purchased of the plaintiff, brought to and tried by the Superior Court in Hartford County, *Kellogg, J.;* facts found and judgment rendered for the plaintiff for $435 only, from which the plaintiff appealed. *Error and new trial ordered.*

Plaintiff is a corporation of North Carolina, engaged in the cotton-waste business, and having a place of business in Providence, Rhode Island. The defendant is a corporation of Connecticut dealing in waste and paper stock, having its principal place of business in Hartford.

On December 20th, 1919, Mr. Lockwood, president of plaintiff, had a conversation over the telephone with Mr. Gross, vice-president of defendant, relative to a proposed contract for paper-stock sweepings. In the conversation Mr. Gross requested that a sample of the paper stock be sent to them at Hartford, and Mr. Lockwood said he would have such a sample sent, but further stated that the sweepings were a low-grade stock and they would not sell by sample, and he requested Mr. Gross to go to New Bedford, Massachusetts, and examine the stock before completing the contract. The plaintiff the same day wrote defendant accepting an offer which it had made to the New Bedford Cotton Waste Company. Shortly after December 20th, 1919, plaintiff sent to defendant a twenty-five pound sample of these sweepings. This sample was intended by the plaintiff merely as a representation as to the bulk of the P. K. S. On January 2d, 1920, plaintiff sent a "sale note," so-called, to the defendant in duplicate duly signed by the plaintiff, and one of these sales notes was returned to the plaintiff duly signed by the defendant on January 10th, 1920. This "sale note" was the written evidence of the contract of the parties.

The sale note above referred to reads as follows:—

Buyers Order No. ...............
Sellers Order No. 208
L. A. Lockwood, Jr. Inc.
Providence, R. I.
Dated January 2, 1920.

L. A. Lockwood, Jr., Inc., of Providence, R. I., agrees to sell and E. Gross & Co., agrees to buy, the following material:

Grade: Oily rags; soiled rags; P. K. S. (paper stock).
Quantity: Our entire collection for 1920.
Quality: As seen and agreed.
Price : Oily rags 4½c.  Soiled rags 6½c. P. K. S. $2\frac{1}{10}$c.
Terms: Net 30 days.
Packing: In bales.
Delivery: As collected.
F. O. B.: New Bedford, Mass.
Ship Via: Freight to Hartford, Conn.
Remarks: Estimated quantities per month—
        Oily rags, 2 to 5 bales.
        Soiled rags.
        P. K. S. 35 bales.

Tare not to exceed 7%.   Present prices to be figured upon closing quotation of New York Midland Upland Cotton on . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Deliveries contingent upon freedom from strikes, fires, mill curtailment, or other unavoidable causes.
  Contract to be treated as made under Massachusetts law.

Accepted:                           L. A. Lockwood, Jr., Inc.
E. Gross & Co.                      Per L. A. Lockwood, Jr.
    Per S. G.                          M. M. T.

"P. K. S." was the plaintiff's trade name for cotton-waste sweepings, which were known to both parties at the time the contract was made as a low grade of paper-stock sweepings.

On January 10th, 1920, defendant instructed plaintiff to send a quantity of paper-stock sweepings to a mill at Fulton, New York, and plaintiff made the shipment.   On February 18th, 1920, defendant wrote plaintiff that these sweepings were not satisfactory,

and contained foreign matter. On February 19th, 1920, plaintiff wrote defendant that before the sale it had sent defendant a twenty-five pound sample and kept one of equal weight so there should be no disagreement, and that it was prepared to defend its deliveries as to samples. February 20th, 1920, defendant wrote plaintiff that the carload of sweepings did not correspond to the sample which it had received. On February 23d, the plaintiff replied to this letter stating that it could not be expected to accept responsibility in regard to the car of waste in question, and would not accept the customer's description "scrap steel, old leather", etc., and that it had confidence in its grading and representing of the stock to defendant. On February 24th, 1920, the defendant sent the plaintiff the price of the sweepings sent to Fulton.

During the next few months after February and up to June 1st, the plaintiff sent other carloads of sweepings to the defendant or their customers, and these were paid for by defendant; there was much correspondence between the parties, and in two of the letters, those of February 20th and May 5th, defendant complained that the material sent was not in accordance with the twenty-five pound sample. The plaintiff always maintained, as appears in the letters of February 23d, May 3d, July 27th, and August 4th, that they had carried out their contract, and that the sale was not made by sample.

After June 1st, defendant failed to send shipping instructions to the plaintiff for deliveries under this contract, and in July made to plaintiff a claim for $258.72 for worthless material shipped, which plaintiff refused to pay. During this period the plaintiff repeatedly requested shipping instructions, but the defendant failed to give them, although repeatedly promising so to do and as late as July 2d, 1920.

On August 26th, 1920, plaintiff shipped fifty bales of

sweepings to defendant at Hartford, but it refused to accept the shipment on the ground that upon inspection of five or six bales the material was found to be no better than previous shipments consisting of wood, iron shives, and other refuse.

On March 10th and on June 10th, defendant requested plaintiff to send a ten-pound sample of the P. K. S., which requests plaintiff complied with.

Paper-stock sweepings P. K. S., as known in the cotton-waste trade, with which the defendant was thoroughly familiar when making the contract, are the riff-raff that is swept up from the floors of mills after the better grades of paper stock have been sorted out and removed. These sweepings are shipped to the waste dealers in packages or bales, and always contain an amount of foreign matter that falls to the floor of cotton mills and is swept up in cleaning the floor; the heavier material is taken out; the balance always contains some of this foreign matter. The price for low-grade paper-stock sweepings of the character known under the trade name of P. K. S., was contracted for by these parties at 2.1 cents a pound. By June, 1920, the market price for this material declined, and by the fall the bottom had entirely fallen out of the market for this low-grade stock. The plaintiff kept its accumulation of sweepings to the end of the year 1920, and the contract price of these, three hundred and thirty-nine bales, was $4,750.37. The plaintiff also claimed the storage charges amounting to $1,231.60, and freight charges amounting to $231.09. Defendant has never paid for fourteen bales of oily rags delivered under this contract, the price of which was $395.65, interest on which to date of judgment was $39.77. None of the sweepings sent to the defendant or its customers were in accordance with the twenty-five-pound sample.

*Walter S. Schutz* and *Ufa E. Guthrie,* for the appellant (plaintiff).

*Josiah H. Peck,* with whom was *Abraham S. Bordon,* for the appellee (defendant).

WHEELER, C. J. The foregoing statement comprises the finding of facts made by the trial court, together with the modification and additions made after the disposition of the errors assigned upon the exceptions to the refusal to correct the finding as requested. Many of these requests to correct we find to be substantially well taken. We modify paragraphs four and fourteen and strike out paragraphs eighteen, twenty and twenty-one of the finding, and add to the finding part of paragraph ten and and paragraphs eleven, twenty-nine and thirty-five of the draft-finding. The modifications of, and additions to, the finding as made by the trial court, very materially change the case which we are called upon to decide.

The contract in suit covered the entire product of plaintiff's rags and paper-stock sweepings. Defendant concedes the plaintiff's claim that this was an entire and indivisible contract, upon the authority of *Norrington* v. *Wright,* 115 U. S. 188, 6 Sup. Ct. 12. The basis of the trial court's decision was its holding that the sale made was a sale by sample, that the deliveries under the contract were not of the quality shown by the sample, and hence the defendant was justified in refusing to accept shipments.

The Sales Act, § 16 (General Statutes, § 4682), provides: "In the case of a contract to sell or a sale by sample (a) there is an implied warranty that the bulk shall correspond with the sample in quality, (b) there is an implied warranty that the buyer shall have a reasonable opportunity of comparing the bulk with the sample, except so far as otherwise provided in section

4713. . . . '' These provisions of this section of the Act reaffirm our law. *Merriman* v. *Chapman,* 32 Conn. 146, 148. It is applicable alike to the contract of sale by sample whether it contemplates delivery in instalments at different times or at one time. To constitute a sale by sample, the contract, in the light of its surrounding circumstances, must show that the parties contracted with reference to a sample which was exhibited, and that they understood that they agreed that the bulk of the commodity which was the subject of the contract should correspond with it.

In Elliott's Connecticut Law of Sales, this rule is thus stated (p. 261): "In order to constitute a sale by sample, so as to raise an implied warranty of conformity between sample and bulk, (1) the seller must exhibit the sample as a specimen of the goods and standard of quality, and not merely as suggestive of their kind and quality; (2) the vendee must rely upon the sample to show the kind, quality and condition of the goods, and not upon his own judgment or upon an express warranty"; and cases cited. "The office of a sample is to present to the eye the real meaning and intention of the parties with regard to the subject-matter of the contract which, owing to the imperfection of language, it may be difficult or impossible to express in words. The sample speaks for itself. But it cannot be treated as saying more than such a sample would tell a merchant of the class to which the buyer belongs, using due care and diligence, and appealing to it in the ordinary way and with the knowledge possessed by merchants of the class at that time." *Drummond & Sons* v. *Van Ingen & Co.* (1887), L. R. 12 App. Cas. 284, 297; note to Ann. Cases, 1917C, p. 329. The fact of correspondence between the goods delivered and the sample is necessarily dependent upon the nature of the goods which

are the subject of the contract. As applied to a definite and known object, correspondence would be a practical identity in quality between the goods delivered and the sample; while as applied to a subject-matter such as cotton-waste sweepings in the instant case, it would be a substantial conformity in quality. One of the best statements in the books of what constitutes a sale by sample, so as to make a vendor liable for failure to deliver goods corresponding to the sample, is *Gunther* v. *Atwell*, 19 Md. 157, 168, from which we quote: "In order that this principle may be applied, it is necessary, in making the sale, that the sample should be so used between the buyer and seller, as to express or become a part of the contract; . . . The mere exhibition of a sample by the seller, and examination of it by the buyer, does not amount to such an averment, unless, from all the facts or circumstances in the case, it can be presumed that an understanding is arrived at between the parties, that the bulk is to correspond with the sample; . . . The reasonable deduction from these cases is, that to effect a sale by sample, so as to bind the seller for a correspondence in bulk, it must be shown that the seller adopts the sample as his own description of the bulk, and that the buyer concludes the purchase upon the faith and credit of the description so given. Upon this theory, it is obvious that in making sales, samples may be exhibited and examined without implying, as a part of the contract of sale, any obligation that the bulk shall correspond with the sample." *Henry & Co.* v. *Talcott*, 175 N. Y. 385, 391, 67 N. E. 617; *In re Nathan*, 200 Fed. Rep. 379; *Pickrell & Craig Co.* v. *Wilson Wholesale Co.*, 169 N. Car. 381, 86 S. E. 187; note to *Jorgensen* v. *Gessell Pressed Brick Co.*, Ann. Cas. 1917C, 329 (45 Utah, 31, 141 Pac. 460).

Williston on Sales, p. 344, points out in note 47 that the authorities adopt one of two views as to when a sale by sample will arise: one, "that the parties must have manifested an intention to contract that the bulk should be like the sample," of which view *Gunther* v. *Atwell*, 19 Md. 157, is a leading example; the other, "that an exhibition of a sample under circumstances which make it tantamount to a representation that the bulk of the goods is, or will be, equal to the sample, amounts to a warranty if a bargain is induced thereby," of which view *Bradford* v. *Manly*, 13 Mass. 139, is an example. Professor Williston maintains that the latter is the better view. We think the decided weight of authority is with the first-named view. If a representation, express or implied, is not made a part of the contract, we do not see how it can affect the sale, unless, indeed, it was a fraudulent representation.

We are, then, to examine the contract of sale made in this case in the light of its surrounding circumstances, to ascertain whether these parties did contract with the intention that the bulk of the sweepings sold should be in quality like the sample, that is substantially like it in quality. Since we have all of the subordinate facts before us, the conclusion as to whether the sale was a sale by sample or not, is one of law and reviewable. The written acceptance by plaintiff of defendant's offer on December 20th, as made to the New Bedford Company, said nothing about a sale by sample. In the telephone conversation of December 20th, preceding the sending of the acceptance of that date, the defendant requested plaintiff to send it a sample, but the plaintiff said it would send a sample but that the sweepings which were the subject of sale were a low grade of stock, and that it, the plaintiff, would not sell by sample. Here was a direct statement that plaintiff

would not enter into a contract of sale by sample. Both the conversation and the letter of acceptance contemplated a more formal written contract called a "sale note." This the plaintiff signed and sent defendant January 2d, 1920. Between the letter of acceptance and the return by defendant of this "sale note" signed, no further communication, so far as this record shows, took place between the parties relative to this sale. Nothing whatever, other than in this telephone conversation, had been communicated or claimed by defendant to plaintiff relative to a sale by sample. The sale note bearing date January 2d, 1920, said nothing directly or by implication as to a sale by sample. All that it said as to quality was "As seen and agreed."

The plaintiff, shortly after December 20th, sent a twenty-five pound sample of these sweepings to defendant, as it had promised. The defendant had no right to infer from the sending of this sample that the plaintiff had reversed its position that it would not sell by sample. The sample was intended by the plaintiff merely as a representation as to the bulk of the sweepings contracted for. We have, then, a fully completed contract which under no possible construction could be held to be a contract of sale by sample. Once made, the contract cannot be changed to one of a sale by sample unless the parties mutually so agree. The finding clearly shows that the plaintiff never so agreed; on the contrary, it shows that it repeatedly and always denied having made a contract of sale by sample, and insisted at all times upon the maintanance of the contract as made and evidenced in the "sale note." The defendant on two occasions only between December 20th, 1919, and September 2d, 1920, claimed that the sale was one by sample. Each of these claims met with a prompt and stout denial from the plaintiff.

These claims were made in the letters of the defendant to the plaintiff on February 20th and May 5th. To the plaintiff's letter of August 4th saying: "But we never did and never would sell it by sample," the defendant replied, but did not controvert this statement.

Despite its claims made in the letters of February 20th and May 5th, that the contract was one of sale by sample, the defendant paid in full for all shipments made prior to June 1st, 1920, and although defendant had made this claim, it met the plaintiff's frequent demands for shipping instructions by repeatedly promising to furnish them, and on none of these occasions did it claim that the contract was a sale by sample, or claim that it was not an existing contract; and the last of these promises was in their letter of July 27th.

These considerations make it clear that the parties to the contract did not intend to, and did not, contract with reference to this sample, and that the contract was not one of a sale by sample at its making, or subsequently made such by the agreement or conduct of the parties to it.

If these facts did not require this conclusion, it would be necessary for us to determine whether or not the defendant, having had an opportunity to inspect plaintiff's stock of sweepings, could thereafter make a lawful claim of a sale by sample. Elliott on Connecticut Law of Sales, p. 262, says: "If before the sale the buyer inspects the goods, or has an opportunity to examine them, it is not a sale by sample." *Salisbury* v. *Stainer*, 19 Wend. (N. Y.) 159.

The plaintiff's offer to establish a custom or usage in the trade relative to sales of such goods by sample, was, we think, admissible as a circumstance tending to show that the parties did not so contract. *Olesen* v. *Beckanstin*, 93 Conn. 614, 618, 619, 107 Atl. 514; *Kinney* v. *Horwitz*, 93 Conn. 211, 215, 105 Atl. 438.

Since the case was disposed of upon the theory that it involved a sale by sample, we shall not attempt to pass upon the question of rescission, or the right of the defendant to refuse shipments upon this record.

There is error and a new trial is ordered.

In this opinion the other judges concurred.