# DEXTER YARN COMPANY *vs.* THE AMERICAN FABRICS COMPANY.

Third Judicial District, New Haven, January Term, 1925.
WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

The Supreme Court of Errors, as established by the Constitution of this State, is a court of last resort for the correction of errors, and its jurisdiction, as described in the Constitution, relates to the determination of principles of law and not to the trial or retrial of pure questions of fact.

This jurisdiction cannot be enlarged by statute, rule of court, or consent of the parties.

That portion of § 5831 of the General Statutes which purports to empower this court to grant a new trial if "it shall find that material facts have been found against the evidence" was held unconstitutional shortly after its original enactment in 1895.

Under our rules (Practice Book, p. 309, § 11) there are three, and only three, exceptions which an appellant may take to a finding of facts, (a) to the refusal to find a material fact, which was an admitted or undisputed fact, (b) to finding a fact in language of doubtful meaning, and (c) to finding a material fact without any evidence.

It is entirely futile to assign errors which resolve themselves into a determination of the weight of evidence, or the credibility of witnesses; these are exclusive functions of the trial court which, once performed, are absolutely and immutably final.

A recital in the record of the testimony as actually given on the trial is only necessary where the error of law claimed is that of finding a material fact without evidence.

An "undisputed fact" means an admitted fact which the trial court has erroneously omitted from the finding, either through inadvertence, or through a mistaken belief that it is immaterial.

Absence of direct contradiction by the mouth of a witness does not make a so-called fact undisputed.

A conclusion from subordinate facts, whether so designated or not, may be assigned as an error of law, if it is claimed to have been drawn illegally or illogically; but an appeal of this nature never involves a review of the evidence.

The trial court, in the present case, found that the contract for the sale by the plaintiff to the defendant of a large quantity of cotton yarn was partly written and partly oral and that it embraced various warranties as to quality and fitness for the defendant's purposes, including a warranty by sample. *Held*

Dexter Yarn Co. *v.* American Fabrics Co.

that this finding, viewed as a conclusion, was sustained by the subordinate facts.

The mere fact that the oral negotiations between the parties culminated in an exchange of letters, did not, as a matter of law, restrict the contract to the written correspondence.

The refusal of the trial court to find, upon uncontradicted testimony, the existence of a certain custom in the yarn trade afforded the plaintiff no cause for complaint in this court.

The contract provided for instalment deliveries which commenced in March, 1920, and were to continue until the end of that year. On October 6th, following frequent complaints by the defendant as to the poor quality of the yarn, a conference was held at which the defendant announced its intention to return all the yarn theretofore delivered and its refusal to pay for it. The plaintiff then proposed to take back, reinspect and return in proper condition the yarn already delivered, provided the defendant would receive and pay for it. The defendant accepted this offer, at the same time informing the plaintiff that it repudiated the undelivered portion of the contract. Thereafter, this so-called "reinspection agreement" was fully executed on both sides, but, upon the defendant's refusal to receive the October, November, and December instalments under the original contract, the plaintiff brought the present action to recover damages therefor. *Held:*

1. That the subordinate facts amply supported the trial court's conclusion that the quality of the September, and prior, instalments was so defective that, on October 6th, the defendant was privileged, under § 4711 of the General Statutes, to repudiate the balance of the contract.

2. That the acceptance and retention of the earlier defective deliveries did not attach to the defendant's privilege of rejecting later instalments the condition (as in certain cases involving breach as to time of delivery) that such rejection must be preceded by reasonable notice, since a provision as to quality is ordinarily of the very essence of a contract of sale; and since, under §§ 4715 and 4735 of the General Statutes, a buyer, who retains defective goods, is not thereby deprived of his statutory remedies, provided he makes seasonable complaint, as did the defendant.

3. That the reinspection agreement was not part of the original contract, but constituted an independent arrangement relating solely to the prior deliveries; and that the defendant's participation therein, and its acceptance of the improved yarn thereunder, did not affect by waiver or estoppel its privilege to refuse the later instalments—a privilege which it had expressly reserved in its acceptance of the reinspection proposal, and, in which the plaintiff had, by its conduct at least, acquiesced.

A waiver is the voluntary relinquishment of a known right; and
whether it exists or not is a question of fact, or a conclusion
of fact.

Argued January 21st—decided June 11th, 1925.

ACTION to recover damages for an alleged breach of
contract by the defendant to take and pay for a quan-
tity of cotton yarn, brought to the Superior Court in
Fairfield County and tried to the court, *Kellogg, J.;*
judgment rendered for the defendant, and appeal by
the plaintiff. *No error.*

The finding discloses the following facts, among
others:

The plaintiff is a Rhode Island corporation, engaged
in the business of manufacturing and selling cotton
yarn. The defendant is a Connecticut corporation,
engaged in the business of manufacturing and selling
cotton fabrics, including the manufacture of lace made
of cotton yarn, upon circular lace machines, adapted to
make lace from coarse cotton yarns.

The plaintiff knew the requirements of the defend-
ant as to the quality, spinning, twisting and inspection
of yarn for use in its lace machines. On or about
December 18th, 1919, an agent of the plaintiff at-
tempted to sell to defendant yarn from a southern mill,
and stated that it would be equal to yarn the plaintiff
had manufactured and sold defendant for years and
would be satisfactory for the defendant's manufactur-
ing purposes. The purpose of the agent in exhibiting
the samples and making the statements, was to induce
the defendant to purchase large quantities of this
southern yarn, and the natural tendency of the state-
ments was to induce the defendant to make such pur-
chase. The samples were of good quality, evenly spun
and twisted, and of a quality suitable to the defend-
ant's requirements.

On or about January 13th, 1920, the defendant

placed a verbal order by telephone with the plaintiff for 290,000 pounds of cotton yarn at 92½ cents per pound, of same quality as samples submitted to defendant on or about December 18th, 1919, delivery to be during 1920, monthly in specified quantities. The plaintiff accepted the order in a letter containing this statement:

"January 13, 1920. American Fabrics Company. . . . Confirming telephone conversation with Mr. Phillips have entered your order for 290,000 pounds of Carded Peeler Skeins to be taken in 6/2, 8/2 and 10/2 at 92½c a pound, 3% 10th proximo, F. O. B. shipping point freight paid, yarn to be of the same quality as samples of 6/2, 8/2 and 10/2 submitted, the matter of twist you will advise in a few days. . . ."

The defendant replied in a letter containing these statements: "January 16, 1920. The Dexter Yarn Company. . . . Referring to the telephone order placed with you on the 13th inst., and referring to your letter of the same date accepting this order, we give you below our exact delivery specifications, showing what quantities of the different numbers we would like you to furnish during the period of the contract. . . . The sooner we can get deliveries started on the 6/2 ply the more it will be appreciated, as we are just now in urgent need of this number. . . . Deliveries to be made as follows:

| | 6/2 | 8/2 | 10/2 |
|---|---|---|---|
| January ....... | | | |
| February ...... | 18,000 lbs. | | |
| March ........ | 16,000 " | | |
| April ......... | 16,000 " | | |
| May .......... | 16,000 " | 14,000 lbs. | 1,000 lbs. |
| June .......... | 12,000 " | 13,000 " | 6,000 " |
| July .......... | 12,000 " | 13,000 " | 6,000 " |
| August ........ | 12,000 " | 13,000 " | 6,000 " |

| | | |
|---|---|---|
| September ..... 12,000 " | 13,000 " | 6,000 " |
| October ....... 12,000 " | 13,000 " | 6,000 " |
| November ..... 12,000 " | 13,000 " | 6,000 " |
| December ..... 12,000 " | 13,000 " | 6,000 " |

150,000 lbs.   105,000 lbs.   43,000 lbs.

Price 92½c pound, 3% 10th proximo.   Freight paid to Bridgeport, Conn."

The contract was partly written and partly oral, and included the warranties as to quality of the yarn, and reasonable fitness for the purpose for which defendant required the same, made about December 18th, 1919, as set forth above. The defendant relied upon the plaintiff's skill and judgment and upon the plaintiff's representations and warranties, above stated. The price of 92½ cents per pound was five to seven and one-half cents higher than the market price, and was asked and accepted on account of the special care required in the production of yarn suitable for the defendant's requirements. Within twenty-four hours after this contract became effective, the plaintiff placed an order with the Swift Spinning Mills, of Columbus, Georgia, for such yarn, and the Swift Spinning Mills accepted it, the yarn to be shipped to the defendant. The first shipment on the 290,000-pound contract was made on March 6th and received on March 17th, and was of four bales each weighing about 400 pounds; about 3,000 pounds were received in April and about 2,500 pounds in May. Due to the delay in shipments, the defendant was required to buy yarn elsewhere, and had large quantities of the same on hand in the early spring and summer of 1920, to the knowledge of the plaintiff. Due to these facts and its ordinary course of business, the defendant did not begin the use of the plaintiff's yarn in its machines in substantial quantities before August, 1920. Between May 14th and July

15th, 1920, the defendant received from the plaintiff over 80,000 pounds of yarn. Some portion of this yarn was received by the defendant in each week. By August 1st, 1920, there had been received by the defendant more than 100,000 pounds of this yarn. On or before September 1st, 1920, the defendant had received more than 160,000 pounds of the yarn. On October 6th, 1920, the defendant had received over 200,000 pounds of the southern yarn from the plaintiff. Defendant received no yarn after October 6th, 1920. Under the terms of the contract there remained to be shipped by the plaintiff to the defendant 26,949 pounds of yarn during the month of October, 1920; 31,000 pounds during November, 1920, and 23,000 pounds during December, 1920. The Swift Spinning Mills had on hand on October 8th, 1920, 12,000 pounds of yarn made up and ready to be shipped to the defendant under the contract.

Substantially all of the yarn delivered by the plaintiff was of poor quality and did not conform to the samples submitted on December 18th, 1919, and was not adapted for use on defendant's lace machines, because of variable diameter, of slack and uneven twist, and of no twist at all. By reason of these defects, the yarn did not conform as to quality to the terms of the contract of January 13th, 1920, or to the representations of the plaintiff to the defendant on December 18th, 1919, or to the samples submitted on that date, or to the express or implied warranties of quality or adaptability for the defendant's purposes made to the defendant by the plaintiff on either day. In May, 1920, and thereafter, the defendant complained to plaintiff verbally, on several occasions, of the uneven spinning and poor quality of the yarn. In August and September, 1920, the defendant made written complaints of the poor quality of the yarn and its unsuit-

ability for defendant's requirements. On each com-
plaint the plaintiff engaged to remedy the defects
complained of in the future. The complaints of the
defendant were seasonably made, and the defendant at
no time intended to or did waive any of its rights
under said contract, either to a rescission of the same
or otherwise, and on October 8th, 1920, the defendant
had not, by reason of any waiver or otherwise, forfeited
its right to rescind the contract on account of the plain-
tiff's breaches of the same. On October 6th, 1920, the
defendant had on hand 177,721 pounds of cotton yarn
received on its contract with the plaintiff. A confer-
ence was held at the office of the defendant at Bridge-
port on October 6th, at which there were present repre-
sentatives of the plaintiff, of the Swift Spinning Mills,
and of the defendant. At this conference Mr. Phillips
stated for the defendant that the yarn which had been
delivered was defective and was unsuitable for use in
the manufacturing operations of the defendant, and
that the defendant intended to return this yarn to the
plaintiff, and would not pay for the same. Thereupon
the plaintiff made the offer to the defendant to take
back all of the 177,721 pounds of yarn and to reinspect
the same carefully, to remove therefrom and credit to
the defendant all yarn which was unevenly spun or
twisted, and return the balance of the yarn to the de-
fendant, if, in consideration thereof, the defendant
would agree to receive and accept the yarn and to pay
for the same at contract price. The defendant accepted
the offer, at the same time advising the plaintiff that it
did not intend to take in any of the undelivered portion
of the order. This agreement was executed.

On October 8th, 1920, the defendant wrote the plain-
tiff formally asking it to cancel the balance of the
order. The plaintiff has never agreed to or acquiesced
in the claimed cancellation or rescission of the contract

by the defendant. The defendant had used on its machines about 40,000 pounds of the yarn delivered to it by the plaintiff under the contract, before the reinspection agreement of October 6th, 1920, was made.

The cotton yarn market in the year 1920 started at a very high price and continued to rise rapidly during the early part of the year until the rise came to a stop in May or June of the year 1920, and shortly thereafter there was a panic. The price of yarn declined rapidly after May or June, 1920, and continued to decline rapidly throughout the last half of the year 1920.

If the plaintiff is entitled to recover damages in this action, the amount of such damages is the principal sum of $43,571.28, plus interest, which interest, figured to January 1st, 1924, amounts to $8,052.57, making a total of $51,623.85, plus interest from January 1st, 1924, on the principal sum.

The complaints made by the defendant to the plaintiff as to the yarn received under the contract were based on two alleged defects in the yarn, that the skeins were heavier than the contract called for, and that some yarn was slack twisted and therefore unsuitable for use by the defendant. No further request was made to the defendant to take the undelivered balance of the yarn until July 14th, 1921. The yarn alleged by the plaintiff to have been reinspected, and which was returned to the defendant, was improved in quality over the yarn originally shipped to the defendant, but even as reinspected was substantially defective, although in a lesser degree than the original shipments, and did not conform to the terms of the contract of January 13th, or to the samples or representations of December 18th. Other findings appear in the opinion.

The court specifically reached the following conclusions as set forth in subdivision II of the finding: "(1)

That the cotton yarn shipped and delivered to the defendant was not of the quality as represented by the original sample; (2) that this cotton yarn when delivered to the defendant was not in suitable condition to be used on its lace making machines, this proposed use being known to the plaintiff at the execution of the contract for the purchase and delivery; (3) that the defendant was justified on October 8th, 1920, and on October 13th, 1920, in cancelling the balance of the order for cotton yarn under this contract of January 13th, 1920, and in declining and refusing to accept any further cotton yarn to be delivered under the contract; (4) that the defendant has paid the plaintiff in full for all cotton yarn delivered to it under this contract."

*Frederick H. Wiggin,* and *James C. Collins* of Providence, Rhode Island, with whom was *William B. Dana,* for the appellant (plaintiff).

*David S. Day,* for the appellee (defendant).

Curtis, J. This case was tried to the court. The plaintiff, among its grounds of appeal, seeks radical corrections of the finding, under the rules of this court set forth in § 11, page 309 of the Practice Book.

Under the law of this State relating to trials to a jury, a verdict of a jury may be set aside by a trial court in the exercise of its legal discretion when it deems that the jury could not reasonably have found its verdict under the evidence. We may also review the evidence to determine, on an appeal from such action, whether the trial court abused its discretion. *Fell* v. *Hancock Mutual Life Ins. Co.,* 76 Conn. 496, 57 Atl. 175; *Burr* v. *Harty,* 75 Conn. 127, 129, 52 Atl. 724.

A finding of a fact by a trial court, arrived at by settling the credit of witnesses, weighing the evidence,

ascertaining the truth from conflicting or incongruous evidential facts, is a function within the exclusive jurisdiction of the trial court under our system of law, and is not reviewable by us. We said in *Styles* v. *Tyler* (1894) 64 Conn. 432, 450, 30 Atl. 165: "Two courts are established and the character of their jurisdiction described by the Constitution itself; one [Superior Court] with a supreme jurisdiction in the trial of causes, and one [Supreme Court] with a supreme and final jurisdiction in determining in the last resort the principles of law involved in the trial of causes." We further held, as to the Supreme Court, that the jurisdiction of this court as fixed by the Constitution relates to the correction of errors in law and not to the retrial of questions of fact. *Styles* v. *Tyler, supra; Atwater* v. *Morning News Co.*, 67 Conn. 504, 525, 34 Atl. 865.

Our jurisdiction cannot be enlarged, to permit the retrial of facts by us, by legislative enactment or rules of court; *Atwater* v. *Morning News Co., supra; Hoadley* v. *Savings Bank of Danbury,* 71 Conn. 599, 613, 42 Atl. 667; and obviously not by the consent or acquiescence of the parties. Where an appeal involves a request for the correction of a finding, as here, by a weighing of the evidence, "it is patent that the real substance of such a proceeding is nothing but a retrial of pure questions of fact settled by the final judgment of the Superior Court. Its actual nature cannot be changed by calling it a correction of the finding." *Atwater* v. *Morning News Co., supra,* p. 526, 34 Atl. 865.

As we said in *Thresher* v. *Dyer,* 69 Conn. 404, 408, 37 Atl. 979: "It is firmly settled by the decisions of this court that our jurisdiction does not extend to the retrial upon the testimony of the facts . . . on which the judgment of a trial court, proceeding according to the rules of law, is founded. And it is immaterial whether such retrial is sought under the claim that the

court erred in reaching a conclusion of fact from the testimony, or under a claim of error in law because a judgment, plainly valid upon the facts settled by the trial court, would be as plainly invalid if it had been rendered on different facts such as might be settled by this court after a retrial on the evidence. The thing actually sought, in either case, is a retrial of facts by an appellate court whose jurisdiction relates only to corrections of errors in law."

We have indicated the limitations upon an attempt to correct a finding on an appeal, in *Thresher* v. *Dyer, supra,* p. 409, where we say: "A statement of the testimony as actually given is only necessary where the error in law of finding a material fact in the absence of evidence is claimed." This implies that no statement of all the testimony is applicable for the retrial of a question of fact in this court, where a finding is attacked because not containing a material fact which was an admitted or undisputed fact. This is so because it is the exclusive province of the trial court to judge of the credit of witnesses. *Bell* v. *Strong,* 96 Conn. 12, 112 Atl. 645; *Phœnix Mutual Life Ins. Co.* v. *Opper,* 75 Conn. 295, 298, 53 Atl. 586; *Allis* v. *Hall,* 76 Conn. 322, 340, 56 Atl. 637.

If, however, on the trial, anything occurred in the presentation of the evidence or otherwise in the nature of an admission, which disclosed the undisputed character of the fact omitted, a transcript of such portion of the evidence or proceeding should accompany the exception to the failure to find such fact. This does not mean that uncontradicted testimony or any testimony creates a situation permitting this court to retry that fact upon testimony certified to it or otherwise. *Hoadley* v. *Savings Bank of Danbury,* 71 Conn. 599, 613, 42 Atl. 667. The evidence can only be used under the rules of court properly construed. *DeFeo* v. *Hin-*

*dinger,* 98 Conn. 578, 120 Atl. 314. It is well to emphasize the fact that no statute or rule of court can permit a change of the subordinate facts found because found against the weight of the evidence, or because the trial court failed to give credit to certain testimony. Errors claimed to have been made by a trial court in finding facts against the weight of the evidence, or because it failed to give credit to the testimony of certain witnesses, or in making its finding of a fact by ascertaining the fact wrongly from conflicting testimony or incongruous evidential facts, are not reviewable. *Styles* v. *Tyler,* 64 Conn. 432, 30 Atl. 165; *Atwater* v. *Morning News Co.,* 67 Conn. 504, 34 Atl. 865; *Nolan* v. *New York, N. H. & H. R. Co.,* 70 Conn. 159, 176, 39 Atl. 115.

If, however, the trial court, from the subordinate facts found, draws a conclusion, whether it specifically designates it as a conclusion or not, such a conclusion may be attacked as an error in law, if claimed to have been illegally or illogically drawn from the subordinate facts. *Kugel* v. *Angell,* 74 Conn. 546, 550, 51 Atl. 533; *Hayward* v. *Plant,* 98 Conn. 374, 379, 380, 119 Atl. 341.

It must be borne in mind, however, that an attack upon a conclusion of the trial court does not involve a review of the evidence to determine whether that conclusion from subordinate facts is illegal or illogical. The evidence can only be considered under the rules of court. As we said in *Hayward* v. *Plant,* 98 Conn. 374, 383, 119 Atl. 341: "The conclusion [of the court] must be tested by the facts as found." That is, by the subordinate facts as found by the trial court and corrected by us, if corrections are made.

Under § 11, paragraph 1, of page 309 of the Practice Book, a fact not found by the court does not become an undisputed fact because one or more witnesses testified to it without direct contradiction. *Thresher* v.

*Dyer,* 69 Conn. 404, 409, 37 Atl. 979; *Allis* v. *Hall,* 76 Conn. 322, 340, 56 Atl. 637.  An undisputed fact under this paragraph means an admitted fact, which the court has not deemed sufficiently material to add to the finding, or has inadvertently omitted from it.  It does not mean a fact as to which no testimony has been offered in contradiction of the testimony supporting it.  In *Allis* v. *Hall, supra,* page 340, we say, in this connection: "The defendant's brief seems to mistake what is meant by an undisputed fact.  Absence of direct contradiction by the mouth of a witness does not make a fact undisputed within the meaning of the rule [Rules of Court].  The trial court is at liberty to discredit any witness or multitude of witnesses, if it deems that it has cause to do so.  It is one of the important functions of a trier to determine the relative credit to be given to oral evidence.  Otherwise false testimony would be a more serious factor in the administration of justice than it now is."

As indicated in *Thresher* v. *Dyer, supra,* the rules of this court for the correction of a finding, limited in application as they are, are founded on the jurisdiction of this court to obtain a correct recital in its process, without impairing the jurisdiction of the trial court to find the facts.

A brief survey of our legislation seems essential in view of the existence of General Statutes, § 5831, among the provisions relating to procedure on appeals in the Revision of 1918.  This reads in part: "If it shall appear to said court [Supreme Court] that material facts have been found without evidence, or that material facts have been proved and not found, it shall grant a new trial."

After *Styles* v. *Tyler* was decided in 1894, Chapter 100 of the Public Acts of 1895 was passed, relating to the procedure on appeals to the Supreme Court.  It

contained the following provision in § 9: "And if the Supreme Court of Errors shall find that material facts have been found against the evidence or without evidence, or material facts have been proved and not found, the court shall grant a new trial." This was an attempt to make the finding of a fact against the weight of evidence, or the not finding of a fact from the evidence, an error of law in the trial court that was reviewable by us. The effect of this provision in § 9 was considered in *Thresher* v. *Dyer, supra,* and it was held that the whole Act, as a procedural Act, was proper legislation, but that in so far as it sought, in § 9, to give to the Supreme Court power to review the action of a trial court in exercising its exclusive jurisdiction in the determination of the facts from the evidence, it was ineffective. This nugatory part of that Act has been carried along with the procedural part of the Act, as will appear in the Public Acts of 1897, Chapter 194, § 10, and its amendment in § 1 of Chapter 162 of the Public Acts of 1901, and in the Revision of 1902, § 796, and the Revision of 1918, § 5831. This reprinting of the nugatory portion of an Act has an obvious tendency to breed confusion as to the rights of parties on an appeal.

In an action tried to the court, as this was, where exceptions are taken to the finding, they must be based on one or more of the three grounds disclosed by the rules in the Practice Book. *DeFeo* v. *Hindinger,* 98 Conn. 578, 580, 120 Atl. 314.

It must, however, be borne in mind, that although the constitutional limitations upon the jurisdiction of this court, as above set forth, prohibit us from finding facts from the evidence presented in the trial of an action and rendering judgment in accord with our finding either as an entirety or supplemental to the finding of the trial court, yet, as a court with jurisdic-

tion only upon questions of law, the record of the proceedings in a trial court may present a finding by a trial court so grossly at variance with the fundamentals of judicial procedure as to amount to an illegal action constituting an error of law, which would justify us in correcting the finding under the rules.

In this case the motion for corrections and additions to the finding asks, first, that certain paragraphs or portions of paragraphs found be stricken out, because they are facts found without evidence. This is a proper request, founded on the third paragraph of § 11 of the rules. Practice Book, p. 309.

The motion also asks that a series of paragraphs therein set forth, numbered twenty-one to one hundred and nine inclusive, be added to the finding, because "supported by the evidence and material to the presentation in the Supreme Court of Errors of the questions of law which the plaintiff desires to have reviewed."

There is no recital in the appeal in relation to the facts set forth in these paragraphs (twenty-one to one hundred and nine inclusive); (1) that they are admitted or undisputed facts, or (2) that they are facts found in language of doubtful meaning.

The motion and reasons of appeal, in so far as they relate to adding paragraphs to the finding, amount, in substance, to the claim that if there is any evidence presented which tends to prove any fact, which the trial court refuses to find, then it is the duty of this court to weigh the evidence and determine whether, on the weight of the evidence, such fact is established. It is obviously beyond the power of this court to make such a finding of facts as the plaintiff seeks. The foregoing discussion demonstrates this position. The motion to correct the finding by adding claimed material facts and the reasons of appeal based upon it, are fatally defective, in that they call for action by this court in

finding facts from testimony that is clearly beyond its jurisdiction.

There remains of the motion to correct the finding and the reasons of appeal relating thereto, only the reasons of appeal which seek to have stricken from the finding certain paragraphs and parts of paragraphs because found without evidence; see pages ninety-one and ninety-two, and one hundred and twenty and one hundred and twenty-one of the record. As stated above, these are reviewable reasons of appeal. The plaintiff claims that the trial court erred in failing, on motion, to strike out from the finding paragraphs ten, thirteen, fourteen, fifteen, nineteen, twenty, twenty-seven, twenty-eight, thirty-three, thirty-four, thirty-seven, forty, and certain words from paragraphs seventeen and twenty-three, and requests this court to make such corrections because all of said facts are found without evidence. Some of the above paragraphs are conclusions and some are not. A review of the evidence printed discloses that there was evidence from which the court could have found the facts set forth in the above paragraphs which are not conclusions.

The paragraphs which are conclusions, are notably paragraph fourteen, parts of paragraphs nineteen and thirty-four, and paragraph forty. As to paragraphs fourteen, nineteen and thirty-four, there are subordinate facts found from which these paragraphs could have been legally and logically found as conclusions. As to the conclusions set forth in paragraph forty, they involve questions of law which we will later discuss. This paragraph is as follows: "40. Under the circumstances, I find that all of said complaints were seasonably made and not unreasonably delayed, and that defendant at no time intended to waive or did in fact waive any of its rights under said contract, either to a rescission of the same or otherwise, and that on October

8, 1920, the defendant had not by reason of any waiver, unreasonable delay or otherwise, forfeited its right to rescind said contract on account of the plaintiff's breach of the same in failing to deliver yarn in accordance with the terms of said contract of January 13, 1920, or in accordance with said samples, or said representations and warranties of December 18, 1919."

As to the paragraphs which we have held were properly found, the burden of the plaintiff's complaint, in brief and in argument, was that they were found against the weight of the evidence. That is not a reviewable claim of error.

In its brief, the plaintiff, mingling its claims as to corrections of the finding with other claims, states generally its claims in this court under four heads as follows:

I.   The court erred in its findings and failures to find as to what constituted the sample of yarn on which the contract was based, and as to the quality of the sample, and misapplied the law to the facts.

II.   The court erred in failing to find that under a universal custom of the trade, it was a term of the contract that the plaintiff should have the right to replace any defective yarn with good yarn.

It seems apparent that in these two of its four general statements of claim, the plaintiff is relying almost entirely upon its claims for corrections of the finding which we have found cannot be granted.

The plaintiff's third and fourth claims of error are as follows:

III.   That the court erred in failing to find that the plaintiff was ready, able, and willing to complete the contract and failed to tender the remaining yarn only because of defendant's unequivocal and final refusal to accept it.

IV.   The court erred in holding that the defendant

had not lost before October 8th, 1920, by election, waiver and estoppel its claimed right to cancel the contract, if any, by acceptance and use of the yarn delivered, by encouraging the plaintiff to spin and ship yarn, and by failure to complain.

We shall deal first with claims one and two of the general statements of the plaintiff's four claims of error. As to the first general ground of error stated above, the plaintiff claims, in the first instance, that the court was in error because it based its decision upon "the terms of an assumed contract which in fact never existed." There was no formal written contract between the parties.

The court, in paragraph nineteen of the finding, finds as follows as to the nature of the contract made: "Said contract of sale was partly written and partly oral, and became effective on the mailing of said letter of January 13th, 1920, and the terms thereof included the warranties as to the quality of said yarn, and the reasonable fitness thereof for the purpose for which defendant required the same, made to the defendant by the plaintiff on or about December 18, 1919, as set forth in paragraphs 13 and 14 of this finding."

These paragraphs read as follows: "13. On or about December 18, 1919, one Brennan, acting for the plaintiff, brought to the defendant's plant at Bridgeport, certain samples of the coarser counts of cotton yarn, and represented to the defendant that the plaintiff could sell it a yarn made by a southern mill which would be in every respect equal to the yarn manufactured by the plaintiff, and which would be entirely satisfactory for the defendant's purposes. Said Brennan then exhibited to the defendant, by said Phillips, its agent, said samples of yarn as samples of said yarn manufactured by said southern spinner whose name was not then revealed to the defendant. 14. The pur-

pose of said Brennan in making said statement and exhibiting said samples, was to induce the defendant to purchase large quantities of cotton yarn from the plaintiff, and the natural tendency of said statements was to induce the defendant to make such purchase."

The court also found, in paragraphs nine, ten, seventeen, eighteen and twenty of the finding, subordinate facts which, coupled with paragraphs thirteen and fourteen above, amply justify the conclusion of paragraph nineteen, as to the nature of the contract. Section 3 of the Sales Act (General Statutes, § 4670) provides as follows: "Subject to the provisions of this chapter and of any statute in that behalf, a contract to sell or a sale may be made in writing, either with or without a seal, or by word of mouth, or partly in writing and partly by word of mouth, or may be inferred from the conduct of the parties." It was a question of fact for the trial court to determine what negotiations took place between the parties, and how the contract was made, whether or not partly by parol and partly by writings. Because two letters were written, they do not, as a matter of law, integrate the contract to the terms in the two letters.

Under the constitutional authority of the Superior Court, it had exclusive jurisdiction to determine these questions; we cannot retry the matter upon a transcript of the testimony. So, also, if the contract was based on a sample of yarn, what yarn was the sample was a question of fact upon which the finding of the trial court under the evidence is final.

In so far as the plaintiff seeks to attack the finding of the court as to what was the sample of yarn, and the quality of the sample, on which the contract was based, there is no error, because the finding of the trial court is final upon such questions of fact.

The finding of the court that the contract of sale

was a sale by sample, was a conclusion legally and logically drawn from the subordinate facts. *Lockwood, Jr., Inc.* v. *Gross & Co., Inc.,* 99 Conn. 296, 305, 122 Atl. 59.

The attempt of the plaintiff is to attack this conclusion by a review of the evidence and not by a review of the subordinate facts. In the preliminary consideration of the powers of this court as to a finding, we have shown that this method of attacking a conclusion is not permissible. The finding of the court as to what constituted the contract being final, the claims and arguments of the plaintiff as to the samples and the quality of the samples and the testimony relating thereto, become merely arguments tending to show that the court found the facts contrary to the weight of the evidence. This does not constitute a valid reason of appeal. Those facts were found upon evidence by settling the credit of witnesses, weighing evidence, and ascertaining the truth from conflicting testimony or incongruous evidential facts. This is a function within the exclusive jurisdiction of the trial court. *Nolan* v. *New York, N. H. & H. R. Co.,* 70 Conn. 176, 39 Atl. 115.

Reasons of appeal fifty to sixty-four inclusive, seventy-one to eighty-five, and one to seven inclusive, in so far as relied upon, are overruled. With the finding as it stands, there could be no reasonable claim that conclusions one and two, subdivision II of the finding, were not legally and logically drawn from the subordinate facts.

The plaintiff, in its second general ground of error, seeks to have added to the finding a specific finding that a certain custom of the yarn trade exists. It claims that it produced testimony of witnesses in order to show that such a custom existed and that this testimony was not contradicted. In our statement of the law as to the correcting of a finding, we have shown

that the mere existence of uncontradicted testimony as to a fact, does not make such fact an undisputed fact. *Allis* v. *Hall,* 76 Conn. 322, 340, 56 Atl. 637. It is beyond our jurisdiction to retry such a question of fact upon the evidence certified. Therefore reasons of appeal one hundred and thirty-two to one hundred and thirty-six inclusive are overruled.

The plaintiff's third general ground of error is that "the trial court failed to find that the plaintiff was able, ready and willing to complete the contract and failed to tender the balance of the yarn because of the defendant's [wrongful] unequivocal and final refusal to accept it."

This "failure to find" is in effect a failure to find essential allegations of the complaint as alleged in paragraphs ten, eleven and twelve thereof. As we cannot search the evidence to determine whether the finding of the court is against the weight of the evidence, we cannot make additions to the finding covering these essential allegations.

The plaintiff's fourth general ground of error is thus stated: "IV. The court erred in holding that the defendant had not lost before October 8th, 1920, by election, waiver and estoppel its claimed right to cancel the contract, if any, by acceptance and use of the yarn delivered, by encouraging the plaintiff to spin and ship yarn, and by failure to complain."

Paragraph forty of the finding, set forth in full above, if legally and logically found as a conclusion from the subordinate facts, negatives the claim of the seller involved in this claim of error, to wit, that the defendant had lost, before October 8th, by election, waiver and estoppel, its claimed right to repudiate the contract as to future instalments.

In dealing with this ground of error, we must bear in mind that this action is brought to recover damages

for the defendant's refusal to accept the yarn of the monthly instalments of October, November and December, delivery of which had never been made by the plaintiff.

When on October 6th, the parties met in conference, the matters in controversy were, in fact, the defendant's rights as to the defective deliveries of instalments from the deliveries in March until and including the delivery of September. The defendant asserted the right to return all the defective yarn delivered, which included the September instalment. This was an announcement made in due time of its refusal to accept that instalment.

The defendant's position is that simultaneously with and as a part of its entering into the agreement of October 6th, it repudiated the contract as to all future instalments, to wit, the instalments of October, November and December, because the defective condition of the September instalment was so material as to justify it in refusing to accept future instalments under § 45 of the Sales Act (General Statutes, § 4711), which reads: "Where there is a contract to sell goods to be delivered by stated instalments which are to be separately paid for, and the seller makes defective deliveries in respect to one or more instalments, or the buyer neglects or refuses to take delivery of or to pay for one or more instalments, it depends, in each case, on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further . . ." And that such repudiation constituted a condition of its acceptance of the reinspection agreement and to that degree modified the seller's proposal, and that the reinspection agreement, set forth below, neither by its terms nor by waiver or estoppel, affected its repudiation of the contract as to future instalments,

as the court found.   See paragraph forty of the find-ing, set forth above.

Dealing, first, with the finding of the court as con-clusions, were they legally and logically made?

As we have stated, the defendant seasonably notified the plaintiff of its rejection of the September instal-ment on October 6th, and then repudiated the con-tract as to future instalments.   The subordinate facts found disclose that when, on October 6th, the parties met in conference, the defendant stated as to this September instalment and the prior instalments, that the "yarn which had been delivered was defective and was unsuitable for use in the manufacturing operations of the defendant, and that the defendant intended to return this yarn to the plaintiff and would not pay for the same."   The defendant further stated, as outlined above, that it did not intend to take in any of the undelivered portion of the yarn.   The first question presented is whether the September instalment was so defective as to justify the buyer, in view of the cir-cumstances of the case, in refusing to proceed further under the contract?

The court found as to the quality of the yarn in each monthly instalment from March to and includ-ing the September instalment, as follows: "33.   Sub-stantially all of said yarn delivered by the plaintiff was of poor quality, did not conform to the samples submitted to the defendant on December 18, 1919, and was not adapted for use on the lace machines of the defendant for the reasons that said yarn was unevenly spun, of variable diameter, and contained substantial amounts of yarn which was slackly and unevenly twisted and in some cases contained no twist at all. 34.   By reason of said defects in said yarn, said yarn so delivered to the defendant did not conform as to quality to the terms of the contract of January 13,

1920, or to the representations of the plaintiff to the defendant on December 18, 1919, or to the samples submitted on said date, or to the express or implied warranties of quality or adaptability for the defendant's purposes made to the defendant by the plaintiff on either of said days."

This condition of the September instalment, coupled with the fact that all prior instalments were in the same condition, amply justified the court in its conclusion that a right then existed in the buyer to repudiate the contract as to future instalments under § 45 of the Sales Act (General Statutes, § 4711). This conclusion is so obviously supported by the facts, that it authorizes us to hold as a matter of law that the breach was so material as to justify the buyer in refusing to go further with the contract.

It is suggested that the acceptance and retention of the defective goods in early instalments, suspended the right to reject later instalments of like defective goods, without prior notice that such course would be pursued; in analogy to the suspension of breaches as to time in *Remington Arms U. M. C. Co., Inc.* v. *Gaynor Mfg. Co.*, 98 Conn. 721, 120 Atl. 572. The analogy is not sufficiently close to support the argument. A provision as to time in a contract of sale is one often not rigidly enforced and is radically different from a provision as to the quality of the goods, which is ordinarily of the very essence of the contract.

Furthermore, the Sales Act, in §§ 49 and 69 (General Statutes, §§ 4715, 4735), provides specifically that the acceptance and retention of the goods does not deprive the buyer of the remedies by action for damages and otherwise, therein provided, if the buyer duly complains of the defective quality within a reasonable time after delivery. An election of a remedy or such a retention of the goods is not done under the penalty of

having the contract as to quality, suspended or annulled by the keeping of the goods. *Williams* v. *Perrotta*, 95 Conn. 529, 111 Atl. 843.

The claim is suggested that the buyer, although it may have the right, because of the defective quality of the September instalment, to repudiate the contract as to future instalments (under § 45 of the Sales Act), and exercised such right, yet, because it simultaneously entered into and executed the reinspection agreement of October 6th (stated below), it thereby waived or was estopped from relying on or enforcing such right.

The reinspection agreement entered into between the buyer and seller on October 6th, 1920, provided that the seller would take back the yarn of all prior instalments then held by the buyer (177,721 pounds) and carefully reinspect it and remove from it all yarn unevenly spun or twisted and return the balance, if the buyer would agree to receive and accept the yarn returned and pay for it at the contract price. The finding recites, in paragraph forty-three, that "the defendant accepted said offer [of plaintiff] at the same time advising the plaintiff that it did not intend to take in any of the undelivered portion of the order." This agreement did not include a specific agreement to annul the simultaneous repudiation of the contract as to future instalments, made by the buyer before the reinspection agreement was entered into.

On the contrary, defendant insisted upon maintaining its repudiation of the contract as to future instalments at the very time of the making of the reinspection agreement. This repudiation of the contract as to future instalments was thus a part of the reinspection agreement and, in effect, was an agreement on the part of the defendant to accept and pay for the reinspected yarn provided its right to repudiate the contract as to future instalments was acquiesced in by plaintiff.

When plaintiff redelivered the yarn after reinspection and defendant then accepted and paid for it and at no time in the course of this transaction surrounding the making and execution of this agreement dissented from defendant's claim of renunciation, its silence, coupled with the execution by defendant of its part of the reinspection agreement, was an acquiescence in defendant's claim. In an amended finding the trial court found that "the plaintiff has never agreed to or acquiesced in the claimed cancellation or rescission of the contract by the defendant." These are conclusions, not findings of fact; as such, we understand them to refer to an expressed agreement or acquiescence, either orally or in writing; otherwise these conclusions would be at variance with the subordinate facts as found. If this be not the correct construction of this paragraph of the amended finding, then we must conclude that the subordinate facts are at variance with the conclusions of this paragraph, and therefore we must follow the facts and disregard these conclusions, and this leads us to the position regarding the meaning and extent of the reinspection agreement which we have before expressed.

As we have construed the reinspection agreement, the situation was not one where the defendant was attempting to accept and reject its contract at one and the same time. In view of our construction of the reinspection agreement, and of the further fact that the plaintiff does not press this point, we do not find it necessary to further discuss it.

It could not be reasonably claimed that, under such agreement, the acceptance by the buyer of the reinspected yarn was equivalent to an acceptance of the September instalment when delivered. The reinspection contract was not made in accord with any terms of the original contract, but is an independent matter

relating to the 177,721 pounds of claimed defective yarn that does not affect the defendant's rights as to its repudiation of the contract as to future deliveries.

The buyer had and exercised its right to repudiate the contract as to future instalments, and there was nothing in the negotiations leading up to the reinspection agreement that could be deemed to be a reasonable basis for a claim that the buyer, by entering into it, had waived its right to rely upon such repudiation. A waiver is a voluntary relinquishment of a known right. Waiver is a fact or a conclusion from facts. *Daly & Sons* v. *New Haven Hotel Co.*, 91 Conn. 280, 99 Atl. 853; *Chatfield Co.* v. *O'Neill*, 89 Conn. 172, 93 Atl. 133. As a conclusion of fact, the court could have legally and logically found, from the subordinate facts, that the buyer had not waived such right.

The circumstances of the entering into the reinspection agreement, as recited above, make impossible any claim as to the buyer being estopped, by entering into that agreement, from relying upon its prior repudiation of the contract as to future instalments. The buyer, when the contract of reinspection was laid before it for consideration, stated to the seller immediately before it agreed to it, that it would not accept future instalments. It is impossible to claim that the seller was misled in regard to the buyer's purpose as to future instalments, and we are therefore of the opinion that the court legally and logically reached the conclusion, from the subordinate facts found, that the defendant had not lost, before October 8th, 1920, by election, waiver or estoppel, its right to repudiate the contract as to future instalments because of the defective condition of the September instalment.

The final conclusion of the court, involved in the judgment, that the buyer, in early October, had the right, and lawfully exercised the right, to repudiate the

contract as to future instalments, was fully justified under the finding.

There is no error.

In this opinion the other judges concurred.